**Marsha Lynn FABIANO, Petitioner-Appellant,**

v.

**Martha WHEELER, Warden, Respondent-Appellee.**

No. 77–1328.

United States Court of Appeals, Sixth Circuit.

Argued June 5, 1978.

Decided Aug. 25, 1978.

Arthur J. Tarnow, Detroit, Mich., for petitioner-appellant.

Frank J. Kelley, Atty. Gen. of Mich., Robert A. Derengoski, Sol. Gen., Lansing, Mich., for respondent-appellee.

Before PHILLIPS, Chief Judge, and EDWARDS and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

In this habeas corpus action the petitioner seeks to have vacated the sentence imposed by a state court following a guilty plea. It is contended that the sentencing judge considered impermissible factors in fixing petitioner's punishment. The district court dismissed the petition upon a finding that no constitutional rights were violated. We affirm.

Petitioner was charged with aiding and abetting an armed robbery and her trial resulted in a hung jury. On the day set for retrial the prosecuting attorney stated on the record that plea bargaining had resulted in an agreement that "if Defendant does

plead guilty to the principal offense of aiding and abetting an armed robbery, . . which is a possible life imprisonment offense, that the Prosecutor recommends to the Court and the Court has indicated that it would accept as a plea bargain that the minimum should be no greater than twelve years and the maximum would be no greater than twenty-five years. That is the total plea bargain at this time." The record before us contains complete transcripts of the plea-taking as well as the sentencing proceedings in the state court.

After both the petitioner and her counsel acknowledged that the prosecutor had stated the plea bargain accurately the petitioner was sworn and examined by the judge. Petitioner stated that at the time of the offense to which she was offering the guilty plea she was on probation from an earlier armed robbery conviction and was awaiting sentencing in federal court for an offense involving theft from interstate commerce. The judge conducted a thorough examination of her understanding of the effect of a guilty plea during which she stated that the plea was made voluntarily and without any promises not disclosed to the court. Petitioner was advised that some jail time was mandatory and responded, "Yes, I understand that" when asked if she understood that she could well be sentenced to serve twelve to twenty-five years. The judge then told petitioner that if he concluded after seeing a probation report that he was not able to comply with the agreement she would be permitted to withdraw her guilty plea and go to trial. After petitioner described the armed robbery, admitting her part in it, the court accepted her guilty plea.

At sentencing the following month petitioner's attorney undertook to place all the blame for petitioner's problems with the law on her use of drugs and an unhappy home life. In asking for probation the attorney stated that "the principal defendant in this matter, who has ultimately resulted in something less than my client is being charged with, he is the culprit and in fact not my client." This apparently referred to disposition of the charges against another person involved with the defendant in the armed robbery. Since petitioner's claim of infringement of constitutional rights is based on the comments of the judge which immediately followed her attorney's plea, the proceedings from that point forward are reproduced here in full:

THE COURT: Anything your client would like to say?

MR. IMPASTATO: Mrs. Fabiano?

THE RESPONDENT: No.

THE COURT: Mr. Impastato, I have considered a lot of things in this case. I have the report which was prepared by Mrs. Lesperance. You have seen it?

MR. IMPASTATO: Yes, Your Honor, I have had an opportunity to review it this morning.

THE COURT: You also had a report from Dr. Gordon Blush regarding this thing. And I have considered a lot of things. And just a couple of things I want to touch upon before I impose sentence.

First of all, let us get down to this matter of guilt.

I have heard, of course, not only in this case, but in all cases like this, about how the other person is more guilty and the other person is the one that should be sentenced. And, "I am not as guilty and I am the one who is taking the rap," and all this stuff.

You know, I get awfully disgusted with that. No one held a gun to Mrs. Fabiano's head and said, "Come on, drive me out and help me commit this armed robbery."

As far as I am concerned, you are as guilty as the co-defendant. I do not know who he is and I don't really much care who he is and I don't care what happened to him. That has nothing to do with this.

It seems to me, if you really felt this way, you would have said to the police, "Look, I was involved in this thing and so and so is the one who was involved in it with me and let's get him, too."

If you elect not to do that and you elect to hold this information, and you elect to do it, then you have to pay the penalty as far as I am concerned.

I have also considered the fact you were on probation, placed on probation on July 11, 1973, for another armed robbery in Lincoln Park where you were given a break and allowed to plead to attempt. And you were on probation when this thing was committed.

I have also considered the fact you were on probation also when you committed a theft from Interstate on September 11, 1974. I have considered that, too.

I have also considered the fact that there was a trial in this case. And I have considered the fact that you allowed your ex-husband to come in here and perjure himself, which he did, from that witness stand. You know it and I know it. He lied through his teeth and he lied through his teeth because you requested him to lie through his teeth. And I know he was lying and everybody else in this place knew he was lying when he was testifying. I thought about that, too.

I have thought about the fact that there is a claim here that heroin is responsible. Heroin isn't responsible for the things you have gotten into. There is only one person that is responsible for the things you have gotten into, Mrs. Fabiano, and that is you, not heroin. You don't blame it on anyone else. I get awful sick and tired of people coming in and saying, "My parents, my parents." My parents, nuts. Your parents did not make you do the things you are doing. I do not know what you thought you were accomplishing by your actions or conduct.

I am not considering your juvenile record because that doesn't have anything to do with it here, except insofar as it may be an answer to the statement that your counsel just made that you had a bad home life your whole life. You were given all the material things and not given any love. But as far as I am concerned, that is a lot of garbage, too.

You were given a break on March 13, or July 11, 1973, and were allowed to plead guilty to attempted armed robbery and was placed on probation. That should be enough. That should have straightened you out, but it didn't. You went right back into it bigger and better than ever. And I have considered all these things. And I have absolutely ruled out any question of probation.

I have been told by Mrs. Rybka, and I have been told by Mr. Blush, you were responding to therapy. And you were responding to therapy on July 11, 1973, too.

As a matter of fact, that probation report, as Mrs. Rybka indicated a little while ago, that probation report reads almost chapter and verse the way this Court reads it, but you weren't responding very long. Once you get your way, then you went back to the old methods.

There is no way in the world that I can justify anything except a prison sentence in this case.

I am sorry to have to say this, but it is high time somebody said, "Hey, wait a minute. This is enough," because the next time this happens somebody may get killed. Somebody could have gotten killed this time, and you better start thinking about that.

It shall be the sentence of this Court, and incidentally I have placed a cap on this sentence. I did it in consultation with your counsel, consultation with the Prosecutor's Office who recommended it, and the police department who also recommended it. I went along with it and I will continue to go along with it.

I hope, sincerely hope, that you see the error of your ways and that you decide to straighten yourself out and that you start to appreciate your family. Instead of dragging them down, and that is what you are doing is dragging them down because they are heartbroken. How do you think your sister feels? How do you think your father feels?

It shall be the sentence of this Court you be sent to the Corrections Commission. As I understand it, it is the Detroit House of Correction. Is that not correct?

MRS. RYBKA: Yes.

THE COURT: There to serve a term of not less than twelve nor more than twenty-

five years. Credit for one hundred and forty-two days. I am going to recommend the Shar House Program in DeHoCo.

I sincerely hope you straighten yourself out.

This is to run concurrent. I do not know what the Federal is going to do, but it will run concurrent with the Federal sentence.

The petitioner contends that the sentence of the trial court was unconstitutional in three respects:

A. The trial court penalized petitioner for her possible suborning perjury of a witness at the trial that resulted in no verdict.

B. The trial court penalized petitioner for exercising her right to remain silent prior to trial.

C. The trial court penalized petitioner for exercising her right to a jury trial.

(Petitioner's brief, at 4.)

We will treat these claims in reverse order.

■ The claim that petitioner was penalized for exercising her right to a jury trial is based entirely on the judge's statement, "I have also considered the fact that there was a trial in this case." When read in context it is clear that this statement was part of the court's response to counsel's claim that petitioner was not actually guilty, that the co-defendant was the real culprit. The court was reminding petitioner and her attorney that he had heard all the evidence at the previous trial. There is no indication that the court is penalizing petitioner for exercising her right to a jury trial. The record in the present case is totally different from that in *United States v. Derrick*, 519 F.2d 1 (6th Cir. 1975), relied upon by petitioner. We note that in *Derrick* the court stated it is almost inevitable that the additional knowledge of the "flavor" of events surrounding an offense which a judge acquires from a trial will affect his decision as to the most appropriate penalty. *Id.* at 4. This claim has no merit.

■ We find the argument that the petitioner was penalized for exercising her right to remain silent prior to trial equally

unsubstantial. This claim is based on the court's statement that petitioner would have to pay the penalty for electing to "hold this information" about her co-defendant. Once again the court was responding to counsel's argument that the only culprit was the absent co-defendant. Read in context the judge's remarks appear to be nothing more than a statement of one reason for believing petitioner was guilty, as she had admitted under oath in open court, and for disagreeing with the most recent assertion of the innocence put forward by her attorney.

Finally, petitioner complains that she was penalized for possibly suborning a witness at her jury trial. It is contended that she received an additional penalty for a crime with which she was never charged and for which she was not tried. As with the first two claims, this one pales when read in context. The court was discussing the matter of guilt to which petitioner's attorney had just addressed himself. The petitioner had recently admitted under oath that she drove another person to a service station, knowing that he was armed and that he intended to rob the station, had waited for him where he had directed and then had driven him away from the robbery. At the trial which had earlier concluded with a hung jury petitioner's former husband had testified on her behalf and provided her with an alibi. (Appendix of Respondent-Appellee, 3a). The judge was justified in believing that this witness had lied and inferring that the petitioner had "allowed" and "requested" him to lie. He testified on her behalf, not as a witness for the prosecution.

The petitioner urges upon us the rule followed by some courts that a trial judge is prohibited from increasing a defendant's sentence because the judge is convinced that the defendant has lied in testifying before him. See *United States v. Adams*, 555 F.2d 353 (3d Cir. 1977), *vacated and remanded sub nom. U. S. v. Moriani*, —— U.S. ——, 98 S.Ct. 3134, 57 L.Ed.2d 1154 (1978); *United States v. Grayson*, 550 F.2d 103 (3d Cir. 1977); *Scott v. United States*, 135 U.S.App.D.C. 377, 419 F.2d 264 (1969). Since arguments were heard and prepara-

tion of this opinion was begun the Supreme Court has reversed the Third Circuit in *Grayson*. See *United States v. Grayson,* —— U.S. ——, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). Even before the matter was settled by the Supreme Court the law of this circuit would not have required the issuance of the habeas writ in the present case. In *United States v. Wallace,* 418 F.2d 876, 878 (6th Cir. 1969), *cert. denied,* 397 U.S. 955, 90 S.Ct. 987, 25 L.Ed.2d 140 (1970), we held:

. . . he [the sentencing judge] may properly consider the fact that a defendant's sworn testimony is inconsistent with the court's finding (or the jury's verdict) of guilty. Indeed, in some such instances the conclusion that the defendant has committed perjury may be inescapable, a circumstance a sentencing judge might well be censored for ignoring.

The petitioner asks us to distinguish *Wallace* on the ground that it applies only to perjury by a defendant whereas she was penalized for suborning perjury. If anything *Wallace* presents a stronger case for relief than the present case. Here the right of a defendant to plead not guilty and maintain her innocence throughout a trial is not involved. Rather, the trial judge found that she went beyond that and permitted someone else to perjure himself by attempting to establish a false alibi for her. It is one thing to say that a defendant may not be penalized for maintaining her innocence and putting the prosecution to its proof and quite another to sanction the fabrication of a defense.

■ Trial judges are given broad discretion in sentencing under our system. Many matters other than the facts proven at trial may enter into the sentencing decision. *Williams v. New York,* 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Rule 32(c), Fed.R.Crim.P. It is illogical to hold that such extraneous materials, which often include hearsay and records of arrest for which no conviction was obtained, may be considered, but that the judge must ignore his conviction that perjury has been committed in the presence of the court. *United States v. Grayson, supra,* 550 F.2d at 110–111 (Rosenn, J., dissenting). In *Wal-*

*lace,* the defendant's guilt had been proven "practically to a mathematical certainty," 418 F.2d at 878; and in the present case the defendant's own recitation of her participation in the robbery absolutely refuted the prior attempt to establish an alibi. These were circumstances to be considered in determining the proper sentence.

■ Of course, the inescapable fact in this case is that the defendant received precisely the sentence she bargained for. The entire statement of the trial judge could reasonably be read as a recital of facts which would have led him to impose a longer term except for the "cap" on the sentence which was included in the plea bargain. A sentence may never be based on constitutionally impermissible considerations. *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). However, where a defendant receives the sentence agreed to in plea bargaining a successful challenge to the sentence requires a clear showing that the trial judge did in fact rely on forbidden factors. The record in this case falls far short of establishing such reliance.

The judgment of the district court is affirmed.