**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Peter R. BARBARA,
Defendant-Appellant.**

**No. 81–1493.**

United States Court of Appeals,
Sixth Circuit.

Argued April 21, 1982.

Decided July 20, 1982.

F. Philip Colista, Detroit, Mich., Robert S. Harrison, Southfield, Mich., for defendant-appellant.

Leonard R. Gilman, U. S. Atty., F. William Soisson, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee.

Before MARTIN, Circuit Judge, and PHILLIPS and BROWN, Senior Circuit Judges.

PHILLIPS, Senior Circuit Judge.

The defendant-appellant, Peter R. Barbara, a former attorney of the Detroit Bar,[1] entered a plea of guilty to all three counts of an information filed by the United States Attorney for the Eastern District of Michigan. The information charged him with the interstate transportation of forged securities and with mail fraud during the course of the operation of his law office. The guilty pleas were entered pursuant to a plea agreement with the United States Attorney under Fed.R.Crim.P. 11. The agree-

---

1. Appellant has been suspended from practicing law in Michigan for three years and one day, effective February 15, 1981.

ment limited the maximum possible sentence of appellant to two and one-half years of imprisonment and a possible fine of $16,-000. The district judge imposed the maximum sentence allowable under the terms of the agreement. This appeals attacks the sentence.

## I

The facts alleged in the charging information and the facts which the appellant admitted in his guilty plea are not in dispute on this appeal. The appellant was the president of a law firm which was a professional corporation, known as Peter R. Barbara and Associates, P. C. The firm specialized in personal injury litigation. In the majority of the cases in which the firm was retained, the clients were represented on a contingent fee basis. The proceeds of the settlements and judgments in civil actions were deposited in client trust accounts.

The appellant engaged in a scheme in which the law firm's clients were deprived of full use of the funds which were paid in settlement of claims in which the law firm represented them. Without first obtaining the consent or authority of the clients, the appellant delayed payments to the clients of funds belonging to them, and used the monies for the operation of the law firm as well as for his own use and benefit. In some instances the payments to the clients were delayed for substantial periods of time.

On May 21, 1981, three days after the Government filed the information, District Judge James P. Churchill accepted the guilty plea of appellant. On July 23, 1981, the appellant appeared before Judge Churchill for sentencing. A presentence report prepared by the Probation Department, a sentencing memorandum prepared by the appellant, and several pieces of correspondence attesting to the good character of appellant, had been submitted to the district judge. Before the sentence was imposed, the two attorneys who represented the defendant-appellant presented allocution statements to the judge, and the appellant addressed the court.

The documents submitted on behalf of appellant, especially the correspondence and the sentencing memorandum, recommended leniency. The sentencing memorandum submitted by the defendant-appellant urged the court not to order a custodial sentence since the defendant posed no threat to society and had suffered enough through shame and humiliation.

This theme that nothing would be gained by imposing a term of incarceration continued in the allocution of the appellant and his attorneys.

After having listened to the statements of the appellant and his attorneys, the district judge made the following statement:

You know, Mr. Barbara has expressed some matters here with which I agree and which I feel, I really believe he feels the way he feels about the law practice, I feel about it a little bit differently. I felt when you get to be a lawyer there is something special. You represent the public before the court. It's a real honor and privilege, kind of semi-public position. It's a real honor.

I believe you feel that way and I also believe what you say about your father and the stigma you feel otherwise about your whole career here in Detroit, the law practice, negligence practice, the kind of practice you have had, not criminal practice essentially, court practice, is totally consistent with what you say.

I agree with counsel that as far as deterrents to lawyers are concerned that probably suspension of your license is as serious as anything can be. I also feel that, and agree with you so far as punishment. Punishment as such gains nothing but there is another factor, I don't know what pigeonhole you put it in.

Unfortunately, about one-third of the public out there think that lawyers got a license to steal. I'm not saying they do. I don't say they are right but there is an awful lot of the public that think so. You know what I'm saying is true. They think the lawyers have a license to steal.

If I did anything except impose a substantial custodial sentence on you I would be justifying their belief. I have been accused in the past of holding lawyers and people in fiduciary positions to a higher standard than others. If that's a fault it's a fault I have. It's part of me, it's part of my whole sentencing philosophy but when you hold yourself up on a pedestal you fall all the further.

It's the judgment of the Court that you be committed to the custody of the attorney general for a period of two and a half years; that you have a committed fine of $16,000. [This was the maximum sentence allowable under the terms of the plea agreement.]

The above statement of Judge Churchill is the subject of this appeal.

### II

In all of his arguments before this court the appellant asserts, in one way or another, that the above statement demonstrates that Judge Churchill violated the appellant's due process or equal protection rights when he imposed the sentence. The appellant attempts to characterize Judge Churchill's sentencing decision as fitting every exception to the general rule that a district judge's sentencing decision is unreviewable.

Relying upon the decision of this court in *United States v. Derrick*, 519 F.2d 1 (6th Cir. 1975), the appellant argues that the decision of the district judge was based upon improper considerations. In *Derrick*, we held that it was improper for the district judge to penalize the defendant for exercising his constitutional right to a jury trial. The appellant contends that the district judge in the present case "relied on his view of a low public opinion regarding lawyers, without empirical evidence therefor" and did not consider the sentencing factors of rehabilitation and individual deterrence.

Next, the appellant asserts that the district judge abused his discretion because he used a "mechanical" sentencing procedure.

This court found mechanical sentencing to be improper in *United States v. Daniels*, 446 F.2d 967 (6th Cir. 1971). In *Daniels*, we held that the practice of imposing the maximum sentence on all persons convicted of draft offenses was so mechanistic as to violate a defendant's due process right to an individualized sentence.

Appellant suggests that the district judge imposed a higher standard on him because of his status as an attorney. The imposition of the maximum sentence in this case, according to the appellant, denies him the right to equal protection under the law because the statements of the judge demonstrate that he would impose a more severe sentence for the same crime upon a lawyer than upon a member of another profession.

### III

We conclude that the arguments of appellant are wholly without merit. A district judge has broad discretion in determining what sentence to impose. *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). There are few exceptions to the rule that a sentencing decision by a district judge is unreviewable if it is within the statutory limits. *See Dorszynski v. United States*, 418 U.S. 424, 431, 94 S.Ct. 3042, 3046, 41 L.Ed.2d 855 (1974). *See generally* Annot.,[2] 21 A.L.R. Fed. 655 (1974). We hold that the present case clearly does not fit any of the exceptions.

There are basically two exceptions to the unreviewability rule: (1) reliance upon erroneous or improper factors or information in sentencing so as to amount to a gross abuse of discretion; and (2) failure to evaluate the sentencing information submitted, or total failure to exercise discretion.

Under the first exception, this court has found it improper for a district judge to punish a defendant for exercising his constitutional right to a jury trial, *United States*

**2.** Direct Review by United States Court of Appeals of Duration of Sentence Imposed by District Court in Federal Criminal Prosecution,

Where Duration Does not Exceed Statutorily Authorized Maximum."

*v. Derrick, supra,* 519 F.2d 1; for a district judge to consider the defendant a perjurer, when there is no evidence in the record to support that conclusion, *United States v. Phillips,* 510 F.2d 134 (6th Cir. 1975); and for the judge to consider information submitted by the prosecution which is not supported by the record, *United States v. Latimer,* 415 F.2d 1288 (6th Cir. 1969).

Under the second exception, this court has found it improper for the district judge to fail to consider and evaluate the sentencing information before him, *United States v. McKinney,* 427 F.2d 449 (6th Cir. 1970), *cert. denied,* 402 U.S. 982, 91 S.Ct. 1648, 29 L.Ed.2d 148 (1971) (conscientious objector who was willing to serve in a noncombat position was still given the maximum sentence by the district judge); and for the district judge to impose the maximum sentence upon all draft resistors, *United States v. Daniels, supra,* 446 F.2d 967.

Two recent decisions of this court demonstrate the limit of appellate review of sentencing decisions. In *United States v. Jones,* 533 F.2d 1387, 1394 (6th Cir. 1976), *cert. denied,* 431 U.S. 964, 97 S.Ct. 2919, 53 L.Ed.2d 1059 (1977), we held that it was proper for the district judge to use a sentence under a federal firearms possession statute to enforce a state statute outlawing the sale of whiskey in a dry county. The district judge placed the defendant on probation on the condition that he would not be caught violating federal *or* state law. It was the clear intent of the district judge to "get [the defendant] out of the whiskey business in the mountains." 533 F.2d at 1393.

In *Fabiano v. Wheeler,* 583 F.2d 265 (6th Cir. 1978), a state custody habeas corpus case, the state court judge made it clear that he was not pleased with the attempts of defendant to shift the blame for the crime to others. He imposed the maximum sentence possible under the terms of the defendant's plea agreement. This court stated, "where a defendant receives the sentence agreed to in plea bargaining a successful challenge to the sentence requires a clear showing that the trial judge did in fact rely on forbidden factors." *Id.* at 270.

■ This case assuredly does not fall within one of the forbidden categories. Judge Churchill considered all of the sentencing information placed before him in light of the traditional sentencing factors: rehabilitation, individual deterrence, general deterrence, protection of society, and societal retribution. Apparently Judge Churchill considered the societal retribution and the general deterrence factors to be the most important. It was well within his discretion for the district judge to make such a determination.

Like the defendant in *Fabiano v. Wheeler, supra,* 583 F.2d 265, the appellant received the sentence for which he bargained in the plea agreement. The appellant has made no showing that Judge Churchill relied upon erroneous information or forbidden factors. The appellant contends that the statement of Judge Churchill that "about one-third of the public out there think that lawyers got a license to steal" is "unsupported by empirical evidence." A recent study conducted by Yankelovich, Skelly and White, Inc., for the National Center for State Courts supports the observations of the district judge, however. *See* Yankelovich, Skelly and White, Inc., *Highlights of a National Survey of the General Public, Judges, Lawyers, and Community Leaders* in State Courts: A Blueprint for the Future, Proceedings of the Second National Conference on the Judiciary (National Center for State Courts Pub. No. R0038, 1978).

Further, we agree with the district court that the public needs to be aware that activities such as those in which the appellant engaged in the practice of law provide the basis for severe punishment. This is true for two reasons: to deter others who are in positions of trust and confidence from committing similar fraudulent acts; and to avoid dilution of the public's confidence in the legal system and other important institutions of society. The district judge did not abuse his discretion in holding that appellant, who is in a fiduciary position, should be held to high standards.

We agree with the decisions of the Tenth and Seventh Circuits in recent cases involving white collar crime. In *United States v. Baer*, 575 F.2d 1295 (10th Cir. 1978), the court held that the district judge's imposition of a severe sentence for parking violations upon a lawyer employed by the United States was not an abuse of discretion. The court stated:

> We concur in the trial court's observation that a licensed member of the bar, a practicing member of the legal profession and an attorney employed by the United States Government has a higher or greater responsibility to display respect for the law—which, we believe, encompasses the entire spectrum of our legal system. *Id.* at 1300.

In *United States v. Brubaker*, 663 F.2d 764 (7th Cir. 1981), the court held that the trial judge did not abuse his discretion in imposing two consecutive five-year sentences upon a bank trust officer for embezzlement. The district judge found that the general deterrence value of a severe sentence and the violation by the defendant of a high position of trust outweighed the past good work of the defendant and the love, trust and respect given him by several responsible people. The court concluded its opinion with this statement:

> Nor, we wish to make it clear, do we affirm in this case merely on the basis of a wooden deference to the fact that the sentence was within the statutory limits nor do we do so simply because the scope of our appellate review here is a narrow one. We are mindful that at least from the days of pickpockets plying their trade in crowds observing the hanging of apprehended pickpockets, historical evidence may have failed to provide a decisive answer as to the effectiveness of stringent punishment as a deterrent to similar conduct on the part of others. The defendant here argues in effect that the mere fact of exposed guilt to one in his position is Procrustean punishment indeed and that the mere possibility of criminal disrepute falling on one in a respected community position is more than sufficient to deter others. It may

have done so in some instances, although it was insufficient in Brubaker's case. This of course, is one of the principal difficulties in ever knowing what is really effective in deterring criminal conduct because those who have been tempted but have resisted that temptation are probably generally not inclined to engage in bruiting about the fact that they would have engaged in criminal conduct except for the fact that they didn't want to face the consequences whatever they might be, whether community disrepute or incarceration.

In considering the district court's emphasis on deterrence, we are also mindful of a somewhat widely held belief, not diminished by media references, that the person with influence, the prominent individual, or one who has engaged in white collar crime is let off with a slap on the wrist while those not in these, or similar, categories are meted out severe penalties. Aside from any policy aspect that justice should not only be evenhanded, but appear to be so, we are unable to say that persons in the position of Brubaker who contemplated engaging in wrongful conduct might not refrain from doing so if they knew from the punishment imposed on others who had succumbed to temptation not only that they might forfeit civil respect but that they would also be likely to be sentenced to substantial imprisonment. *Id.* at 770.

When Judge Churchill imposed sentence, he observed that Barbara made a "good deal" in his plea bargain. Barbara could have been sentenced to 25 years in prison if he had been found guilty after a trial on all three counts; ten years each on the interstate transportation of forged securities counts under 18 U.S.C. § 2314, and five years on the one mail fraud count under 18 U.S.C. § 1341. The appellant's offenses were serious. He fraudulently used settlement monies of clients who had placed their faith in him. He abused his trust as a licensed attorney.

Affirmed.