819 F.2d 1142
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Stephen KUZNIAK, Defendant-Appellant.
 No. 86-3414.
 United States Court of Appeals, Sixth Circuit.
 June 2, 1987.
 
 Before LIVELY and RYAN, Circuit Judges, and PORTER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Kuzniak appeals his conviction and sentencing for the collection of extensions of credit by extortionate means under 18 U.S.C. Sec. 894(a) and (a)(2). He contends that a preindictment delay of over three years following the commission of the offense rendered his trial fundamentally unfair; that the evidence was insufficient to support a conviction; and that the disproportion between his sentence and that of a codefendant violated due process and equal protection.
 
 
 2
 The centerpiece of Kuzniak's trial was an FBI videotape made on July 19, 1982, which shows him bullying a 17-year-old drug user, Biviano, for over an hour in order to force Biviano to pay the $100 he owed to a drug dealer named Hacker. The videotape shows Kuzniak purporting to arrest Biviano for the possession of cocaine and then implying that no prosecution would ensue if Biviano paid his debt. Kuzniak handcuffed Biviano, held a gun to his head, threatened to shoot him, threatened to blow up his house, threatened him with prosecution, and impressed him with the folly of seeking to report Kuzniak to higher authorities. Biviano consistently maintained that he had no money, but, eventually, he agreed to pay by July 10.
 
 
 3
 Additional testimony established that the "cocaine" discovered by Kuzniak was in fact flour planted on Biviano's bicycle by Hacker, and that Biviano in fact paid his debt on schedule.
 
 
 4
 Kuzniak's defense was that he had engaged in this shakedown in his capacity as an unpaid special reserve deputy sheriff assigned to conduct an undercover drug investigation. He testified that he met on May 5, 1982, with Mahoning County Sheriff Traficant, who assigned him to assume the role of a "dirty cop" in order to undertake an undercover investigation of a local drug dealer, Coates. Kuzniak testified that he was accompanied in this meeting by Chito, who was to act as his informant and provide an entree into the local drug-dealer subculture. Chito took part in the videotaped "arrest" of Biviano, and was Kuzniak's co-defendant at trial.
 
 
 5
 Along with the FBI videotape, the jury also viewed the videotaped testimony of former Sheriff, then U.S. Congressman, Traficant. He was not a helpful witness for the defense. He had no real idea why Kuzniak and Chito were on trial, did not know about the shakedown of Biviano, and had only the vaguest of recollections of the May 5, 1982, meeting. Traficant had no recollection of assigning Kuzniak to investigate Coates, the drug dealer Kuzniak claimed to be investigating, and did not recall Chito's name or the date of the meeting. Traficant insisted, however, that he had never authorized Kuzniak to plant false cocaine, to make a false arrest, or to break the law. This deposition was taken on December 7, 1985, three-and-a-half years after the events in question.
 
 
 6
 The Biviano incident was videotaped by the FBI on July 19, 1982, because Coates, the drug dealer Kuzniak and Chito say they hoped eventually to arrest and whose apartment was the scene of the incident, happened to be an FBI informant. It was no coincidence, however, that Kuzniak was snared by the FBI, because the FBI was then conducting an investigation into sheriff's department corruption in drug cases. Both Chito and Kuzniak were confronted with the videotape in late 1982, and thereafter, Kuzniak temporarily became an unsuccessful informant for this investigation.
 
 
 7
 The FBI investigation continued until early in 1984. Once it was terminated, the FBI interviewed Biviano, in April 1984, and recommended prosecution of Kuzniak and Chito. The case was assigned to the Cleveland Organized Crime Strike Force, which was short of prosecuting attorneys at the time. Consequently, the case was not presented to a grand jury until July of 1985.
 
 
 8
 Both defendants moved to dismiss the indictments on the ground that prejudicial preindictment delay had violated their right to due process of law. In this court, Kuzniak contends that denial of those motions has been shown to be erroneous because the key defense witness, Traficant, had forgotten important exculpatory details by the time he gave his deposition.
 
 
 9
 We reject this contention, because Kuzniak has failed to show that the three-year preindictment delay substantially prejudiced his defense or that it was "an intentional device by the government to gain tactical advantage." United States v. Duncan, 763 F.2d 220, 222 (6th Cir.1985). The testimony of Congressman Traficant might have been more strongly supportive of Kuzniak's own credibility if Traficant had recalled more details of the May 5, 1982, undercover drug investigation assignment, which Kuzniak relied upon for his defense of lack of mens rea. However, Traficant denied authorizing false arrest and extortion as investigative techniques, and knew nothing about an investigation of Coates. Furthermore, there was no suggestion in Traficant's testimony that he ever had knowledge of the deeds Kuzniak carried out on July 19, 1982.
 
 
 10
 Regardless of what testimony Kuzniak could have obtained if the trial had been held earlier, when witnesses' memories were clearer, the jury would still have been required to draw its own conclusions, from Kuzniak's demeanor at trial and on the FBI videotape, about whether Kuzniak threatened his victim with criminal intent or solely to further a misguided investigation into criminal activity. The vagueness in Traficant's testimony that is attributable to delay did not substantially prejudice Kuzniak's defense.
 
 
 11
 Furthermore, there has been no showing that the delay was a tactic to gain unfair advantage. The government attributes delay to the ongoing investigation into Sheriff's Department corruption, an investigation in which Kuzniak played a part, and to the assignment of Kuzniak's case to an understaffed "strike force" assembled to combat "organized crime." The delay, while regrettable, was not intentional.
 
 
 12
 Kuzniak also claims that the government's evidence of conspiracy was based on an "impermissible inference" from the known facts and that there was no evidence to rebut his defense that he committed the acts "in his capacity as an undercover officer." However, in reviewing the sufficiency of the evidence for a jury verdict, we are "bound to view the totality of the evidence in the light most favorable to the Government," and "all reasonable inferences must be drawn which are consistent with the verdict." United States v. Green, 548 F.2d 1261, 1266 (6th Cir.1977).
 
 
 13
 Even apart from statements made to the FBI by Chito and Kuzniak suggesting that they went to Coates' apartment along with two other men specifically planning to force Biviano to pay Hacker, there was unchallenged evidence that they arrived along with Hacker, who planted the "cocaine" on Biviano's bicycle, and that Kuzniak then proceeded to find that evidence and use it to conduct a patently sham arrest, and then to use that sham arrest as a weapon in order to extract from Biviano a promise that the debt owed to Hacker would be paid.
 
 
 14
 "This Court has long recognized that purely circumstantial evidence may be sufficient to sustain a conspiracy conviction. United States v. Chambers, 382 F.2d 910, 913 (6th Cir.1967). The permissible inferences to be drawn from such evidence need not be consonant only with an hypothesis of guilt, United States v. Luxenberg, 374 F.2d 241, 249 (6th Cir.1967), providing that the totality of the evidence is substantial enough to support a finding of guilt beyond a reasonable doubt."
 
 
 15
 Green, 548 F.2d at 1266. The most reasonable inference from this evidence is that Kuzniak conspired with others in advance to conduct a sham arrest in order to collect money from Biviano.
 
 
 16
 On the issue of Kuzniak's intent, his testimony that his motive was to conduct a drug investigation, even assuming it was unrebutted, is not dispositive. A good motive may or may not be relevant to whether a defendant acted with criminal intent. United States v. Hammond, 642 F.2d 248 (8th Cir.1981). In this case, the jury could most reasonably infer from Traficant's testimony that Kuzniak's investigation of Coates had never been specifically authorized, and that the tactics employed were neither approved nor even known of in the Sheriff's Department. The question for the jury therefore was whether Kuzniak threatened and abused Biviano in the sincere belief that this was a legitimate means of carrying out his role of the "dirty cop," in order to ingratiate himself with the criminal subculture and thereby further a drug investigation, or whether he was actually acting under color of his official authority in order to further criminal ends of his own. The videotape of the acts being committed is very persuasive evidence that Kuzniak acted with criminal intent.
 
 
 17
 The totality of the evidence presented at trial sufficed to support a finding, beyond a reasonable doubt, that Kuzniak conspired to conduct a sham arrest to collect money and acted with criminal intent in carrying out that scheme with violence and threats. The jury's verdict was therefore founded upon sufficient evidence.
 
 
 18
 Finally, Kuzniak's challenge to the disparity in sentencing is also without merit. Upon conviction under a statute providing for a maximum sentence of 20 years, Kuzniak received a two-year sentence, while Chito received a six-month sentence. It is manifest from the evidence that Kuzniak's conduct was much more egregious than Chito's. It was Kuzniak who purported to arrest Biviano, who took the lead in badgering him, who waved the gun in his face, who finally cut a deal with him. Chito stood by and occasionally contributed a comment. Even if the disparity in sentences were not amply supported by the facts, sentencing within the statutory limits is virtually unreviewable. United States v. Barbara, 683 F.2d 164, 166 (6th Cir.1982). The exceptions to that rule do not apply here.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The Honorable David S. Porter, Senior Judge for the United States District Court for the Southern District of Ohio, sitting by designation