**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph J. PAVLICO, Defendant–
Appellant.**

**No. 90–6629.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 3, 1991.

Decided Feb. 28, 1992.

As Amended March 23, 1992.

Victoria B. Eiger, New York City, argued (Alan M. Dershowitz and Claudia M. Marbach, Cambridge, Mass., on brief), for defendant-appellant.

Max Oliver Cogburn, Jr., Asst. U.S. Atty., Asheville, N.C., argued (Thomas J. Ashcraft, U.S. Atty., on brief), for plaintiff-appellee.

Before WIDENER, WILKINSON, and WILKINS, Circuit Judges.

## OPINION

WIDENER, Circuit Judge:

Joseph J. Pavlico appeals from an order of the United States District Court for the Western District of North Carolina denying his Fed.R.Crim.P. 35(a) motion challenging the legality of the sentence that court imposed upon him following convictions under the federal false statements and mail fraud statutes, 18 U.S.C. §§ 1001, 1341. Pavlico claims (1) that the district court improperly considered the perjurious trial testimony of himself and his wife in fixing his sentence; (2) that the district court took personal offense at certain testimony of Pavlico's wife, thereby improperly affecting the sentencing decision; and (3) that his sentence is so disproportionate to the culpability of his conduct as to violate the Eighth Amendment's prohibition against cruel and unusual punishment. Treating Pavlico's action as a motion to vacate sentence under 28 U.S.C. § 2255, we find these claims to be without merit, and accordingly we affirm the judgment of the district court.

I

An understanding of the present appeal requires a brief discussion of the two separate criminal proceedings that arose out of Pavlico's conduct. Both of Pavlico's federal criminal prosecutions were the result of his involvement, along with his associate and co-defendant Arthur Jacoby, in a fraudulent investment scheme known as Financial and Business Services, Inc. (FBS).

Though Jacoby was the sole founder of FBS, Pavlico, through his efforts as an investment salesman and later supervisor of several other salesmen, enabled the fraudulent enterprise to realize its full potential. Jacoby and his wife were the sole stockholders of FBS. FBS promised investors a sixteen percent return on investments that were supposed to have been reinvested by FBS in second mortgages. However, FBS invested very little of these funds in second mortgages. Rather, investors' money was funneled into other companies owned by Jacoby and otherwise misappropriated; in effect FBS became a giant pyramid scheme. FBS's victims invested sums ranging from $5000 to $200,000. When FBS finally declared bankruptcy in 1985, it owed some 500 investors a total of $6.8 million, with $6 million unaccounted for.

In July, 1986, Pavlico was tried and convicted in the Western District of North Carolina on nine counts of violating the Currency Transaction Reporting Act, 31 U.S.C. § 5311 *et seq.*, and one count of conspiring to violate the false statement provisions of 18 U.S.C. § 1001. (This will be referred to as the Reporting Act trial.) See *United States v. Arthur Jacoby and Joseph Pavlico*, 836 F.2d 547, 548 (4th Cir. 1987) (unpublished). Pavlico did not testify in his defense at that trial, a fact that became an issue in his second trial and thus

in the present appeal. Pavlico was sentenced to four years in prison in the Reporting Act trial. Jacoby was convicted on similar charges and was sentenced to 15 years in prison.

Following his Reporting Act trial convictions, Pavlico and Jacoby were indicted again in the Western District of North Carolina, this time on multiple counts of violation of the federal mail fraud and false statements statutes, 18 U.S.C. §§ 1001, 1341. It is this case we now consider. At this trial Pavlico elected to testify in his defense. During his direct examination, Pavlico suggested that he "never had a chance to tell any part of [his] story to the Courts," and that his counsel during his first trial had convinced him, against his wishes, not to take the stand. Pavlico maintained again during cross-examination that his previous trial counsel had "kept him off the stand," in part by assuring Pavlico that he would not be convicted and that there thus was no need for his testimony. Moreover, Pavlico's testimony is replete with statements which, if believed, would tend to exculpate him from the charges of fraud. See *United States v. Pavlico*, 741 F.Supp. 582, 585–86 (W.D.N.C. 1990); see also, e.g., App. 113, 138–39, 143, 147, 228–40.

Following Pavlico's testimony, the government was permitted to call to the stand the attorney who represented Pavlico during the Reporting Act trial, Mr. George Laughrun. The sole purpose of Laughrun's testimony was to rebut Pavlico's assertion that his lawyer had somehow prevented him from testifying at the Reporting Act trial. Laughrun denied both that he had in any way coerced Pavlico into declining to testify, and he also denied that he had ever told Pavlico that, in his opinion, there was no way Pavlico could be convicted of the charges at the Reporting Act trial. Laughrun testified that he did advise Pavlico that, in his opinion, it was in Pavlico's best interest not to take the stand. Laughrun made clear, however, that Pavli-

co was aware that the ultimate decision whether to testify remained with Pavlico.

The issue of Pavlico's decision not to testify at his first trial came up later, this time during the testimony of Pavlico's wife, Michelle. Pavlico apparently called his wife solely to rebut attorney Laughrun's testimony. Mrs. Pavlico testified that Laughrun not only had urged her husband not to testify at the Reporting Act trial, but also that Laughrun told the Pavlicos that he had spoken with the district judge, and that the judge believed that Pavlico would be acquitted, thus making Pavlico's testimony unnecessary.

Ultimately, the jury convicted Pavlico of nine counts of mail fraud and one count of making false statements to the Securities and Exchange Commission. Jacoby for his part was convicted of 23 counts of mail fraud and one count of making false statements to the S.E.C. The court proceeded to sentence Pavlico to a 40–year term of imprisonment, to run consecutively to the four-year sentence he had received in the Reporting Act trial. Jacoby received a prison term of 20 years, also to be served consecutively to his prior sentence. As we shall discuss more fully below, at sentencing the district judge noted his belief that both Joseph and Michelle Pavlico had perjured themselves when they testified at trial. This comment of the district judge is the basis of some of Pavlico's present claims. Before examining those claims, however, we must address a procedural matter that has come to our attention.

## II

As we have noted, Pavlico raised the claims at issue today through the use of a motion which he labeled under Fed. R.Crim.P. 35(a).[1] Rule 35 provides for three different types of challenges to a criminal sentence, each aimed at a different type of defect. See generally 3 C. Wright, *Federal Practice and Procedure: Criminal 2d* §§ 582–86 (1982). First, a convicted defendant may move the court to correct

---

1. We refer throughout this opinion to the former Fed.R.Crim.P. 35, which applies to this pre-

Sentencing Guidelines case.

an "illegal sentence" at any time following the conviction. Second, the court "may correct a sentence imposed in an illegal manner," but only upon motion made within 120 days of the occurrence of a listed triggering event; here the relevant event is the "receipt by the court of a mandate issued upon affirmance of the judgment [of conviction]." Third, the court may entertain a motion for reduction of sentence, which motion also is available only within the 120 day period. The time limits obtaining to the latter two motions have been held to be jurisdictional. *United States v. Addonizio*, 442 U.S. 178, 189, 99 S.Ct. 2235, 2242, 60 L.Ed.2d 805 (1979).

The district court received this court's mandate affirming Pavlico's conviction on August 14, 1989. *Pavlico*, 741 F.Supp. at 583. Pavlico filed the instant *pro se* motion on June 26, 1990, greatly in excess of the 120-day limit. Thus, Pavlico's motion was proper under Rule 35 only if his challenges are to an "illegal sentence" under Rule 35(a) so that the time limit does not apply at all. We find that Pavlico's is not an "illegal sentence" and thus that this case may not be maintained under Rule 35(a).

The Supreme Court has limited the types of defects that will render a sentence "illegal" for purposes of attack without regard to time under Rule 35(a). "Sentences subject to correction under [Rule 35(a) ] are those that the judgment of conviction did not authorize." *United States v. Morgan*, 346 U.S. 502, 506, 74 S.Ct. 247, 250, 98 L.Ed. 248 (1954); see also *Hill v. United States*, 368 U.S. 424, 430, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1962) (rejecting Rule 35(a) challenge where "[t]he punishment meted out was not in excess of that prescribed by the relevant statutes, multiple terms were not imposed for the same offense, nor were the terms of the sentence itself legally or constitutionally invalid in any other respect."). The clear import of these cases, as the treatise writers have recognized, is that a Rule 35(a) motion challenging an illegal sentence may be brought only when the sentence imposed exceeds the statutorily-authorized limits, violates the Double Jeopardy Clause, or is ambiguous or inter-

nally contradictory. See C. Wright, *supra*, at § 582; 8A *Moore's Federal Practice 2d* ¶ 35.07 (1991).

■ Pavlico's sentence was not illegal within the meaning of Rule 35(a). His 40-year prison term for conviction on nine counts of mail fraud and one count of making false statements falls well within the statutory range, see 18 U.S.C. §§ 1001, 1341, and his other challenges simply do not fall within the narrow category of those which may be brought at any time under Rule 35(a). We express no opinion as to whether this motion is in fact a challenge to a legal sentence illegally imposed or merely a motion for reduction of sentence; in either case the motion is barred by the 120-day time limit. Thus, we may not proceed with this case under Rule 35(a).

■ The foregoing holding, however, does not end our inquiry in this case. The Court has recognized that in the area of prisoners' challenges to allegedly unlawful imprisonment, "adjudication upon the underlying merits of claims is not hampered by reliance upon the titles petitioners put upon their documents." *Andrews v. United States*, 373 U.S. 334, 338, 83 S.Ct. 1236, 10 L.Ed.2d 383 (1963); see also C. Wright, *supra*, at § 583. In *Andrews* the Court approved the Second Circuit's decision to treat a prisoner's action brought erroneously under Rule 35 as a motion under 28 U.S.C. § 2255. *Andrews*, 373 U.S. at 338, 83 S.Ct. at 1239. Because Pavlico's claims properly could have been raised in the district court by a motion to vacate sentence pursuant to § 2255, we will so treat this action for purposes of this appeal.

While our decision to treat this action as one under 28 U.S.C. § 2255 relieves Pavlico of the burden of some procedural hurdles, § 2255 proceedings themselves implicate another, no less weighty set of procedural challenges. See *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). However, we need not address whether these doctrines apply to bar Pavlico's claims here, as we are convinced that the district

court acted properly in this case and that Pavlico was in no way prejudiced by his failure properly to raise the instant issues on direct appeal of his criminal case. We now proceed to a discussion of those claims.[2]

### III

Upon passing sentence on Pavlico, the district judge stated at some length his reasons for Pavlico's 40–year prison term. Though his comments dwelled to a considerable extent on the hardship that Pavlico's fraudulent acts had worked on FBS's victims, based on the fact that Pavlico was equally responsible as Jacoby, although not so held at the Reporting Act trial, the judge made the following remark regarding the trial testimony of Pavlico and his wife: "[A]nd then he gets up here on top of that and I believe commits perjury on the stand, as well as his wife, and he knew exactly what was going to be testified to by his wife as to Mr. Laughrun. Unmitigaged, [sic] untruthfulness."

At the outset, we should say that the record is not entirely free from doubt as to whether the district judge in the above passage was referring to Pavlico's trial testimony as a whole as perjurious, or whether that comment was directed only to Pavlico's testimony regarding Laughrun. We believe that the district judge's remarks at sentencing, as well as his opinion denying

the instant motion, see *Pavlico*, 741 F.Supp. at 585–86, can be read as supporting either view.[3] Therefore, we shall assume for purposes of this appeal that the district judge found that Pavlico had perjured himself both in his general trial testimony and in his statements regarding attorney Laughrun. The record supports the conclusion that Pavlico perjured himself on both occasions, and his wife on one, as we set out below.

Pavlico's first contention is that there is no evidence in the record to support the district judge's finding that he and his wife perjured themselves. We are convinced, however, that the district judge's finding of perjury is amply supported by the record. First, with regard to the testimony concerning Pavlico's decision not to testify in the Reporting Act trial, Pavlico asserted that Laughrun "assured [him] that [he] would not be convicted." Michelle Pavlico went so far as to assert that Laughrun told her husband that Laughrun had spoken with Judge Potter and that the Judge was of opinion that Pavlico was "going to walk." However, Laughrun testified unequivocally that he never told Pavlico that he believed that he would not or could not be convicted on the charges at the Reporting Act trial.[4] Thus, the district judge's finding of perjury in this regard was not clearly erroneous.

Moreover, as we have already noted, there is ample evidence in the record to

---

2. We note that the government has raised another procedural argument which it argues should prevent us from considering the substance of Pavlico's claims. The government argues that, with the exception of the Eighth Amendment claim, none of Pavlico's present claims were raised in the district court and thus they are not properly before this court. See *United States v. One 1971 Mercedes Benz*, 542 F.2d 912, 915 (4th Cir.1976). However, we have reviewed Pavlico's *pro se* Fed.R.Crim.P. 35(a) motion, and we are satisfied that that document sufficiently raises his claims regarding the district court's allegedly improper consideration of his and his wife's perjury. Though Pavlico's appellate counsel undoubtedly have restated these claims in a more artful manner, we cannot say that the district court was without the opportunity to rule on their substance. Indeed, the district court did address Pavlico's perjury in its written opinion. See *United States v. Pavlico*, 741 F.Supp. 582, 585–86 (W.D.N.C.1990).

3. We note that the district court was under no obligation to specify which portions of Pavlico's testimony he found to be perjurious. See, e.g., *United States v. Barbosa*, 906 F.2d 1366, 1370 (9th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 394, 112 L.Ed.2d 403 (1990).

4. Though Laughrun did not specifically deny telling the Pavlicos that he had discussed the case with Judge Potter, we note that Laughrun's testimony came before Michelle Pavlico's allegation that Laughrun had reported such a conversation. Thus, we do not think it significant that Laughrun did not specifically deny an allegation that had not yet been made. We find Laughrun's general, unequivocal denial in this regard sufficient to support the district judge's finding that both Pavlicos committed perjury.

support the district judge's finding that Pavlico committed perjury throughout his testimony. Pavlico repeatedly denied any knowledge of the fraudulent nature of the enterprise of which he was the chief sales agent. See, e.g., App. at 113, 138–39, 143, 147, 228–40. However, the balance of the evidence presented, on which the jury based its verdicts of guilty, plainly was a sufficient basis for the district judge's determination that Pavlico's denials amounted to perjury. In sum, we find Pavlico's claim that there was no factual basis for the district court's finding of perjury to be without merit.

Pavlico argues in the alternative that, even if he and his wife did perjure themselves, the district court erred in considering that perjury during sentencing. First, Pavlico asserts that a district court operating under pre-Guidelines law may not take into account a defendant's perjury as a factor in the sentencing determination unless the defendant is provided with both advance notice of the judge's intention to consider such conduct and an opportunity to rebut the judge's determination that perjury was committed. Because we find no basis in the pre-Guidelines sentencing law for any such strict notice requirement, this argument must fail.

■ That a sentencing judge, prior to the Sentencing Guidelines, might take into account a convicted defendant's perjury in passing sentence is beyond question.[5] In *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), the Court rejected the argument that a sentencing judge's consideration of a defendant's untruthful trial testimony amounted to punishing the defendant for perjury without due process of law. The *Grayson* Court

held that "it is proper—indeed, even necessary for the rational exercise of discretion—to consider the defendant's whole person and personality, as manifested by his conduct at trial and his testimony under oath, for whatever light those may shed on the sentencing decision." 438 U.S. at 53, 98 S.Ct. at 2617; see also *United States v. Moore*, 484 F.2d 1284 (4th Cir.1973) (permissible for judge in sentencing to consider his perception that defendant perjured himself).

■ Therefore, we are left with the claim that the law requires that a defendant be provided with a special notice and opportunity to be heard before a sentencing judge may take into account perjurious trial testimony of that defendant. We begin by noting that the specific basis for the *Grayson* holding was that the due process guarantee was not violated by the district judge's consideration of his own perception, based on his observation of the testimony at trial, that the defendant had perjured himself. Thus, the very holding in *Grayson* suggests that no extraordinary process is due a defendant when perjurious testimony is used as a factor in sentencing. Moreover, the *Grayson* opinion, as emphasized by Justice Stewart in dissent, contains not the slightest suggestion that any such enhanced procedures are required. See 438 U.S. at 57–58, 98 S.Ct. at 2619 (Stewart, J., dissenting).

The case law of our fellow circuits is similarly devoid of any hint that a trial judge's considered opinion that the defendant has perjured himself is an insufficient basis for considering that perjury during sentencing. See, e.g., *United States v. Bortnovsky*, 879 F.2d 30, 43 (2d Cir.1989); *United States v. Beaulieu*, 900 F.2d 1537,

---

5. In *United States v. Dunnigan*, 944 F.2d 178 (4th Cir.1991), this court restricted a post-Guideline sentencing court's ability to enhance a defendant's sentence for obstruction of justice on grounds that the defendant's trial testimony was disbelieved. See *Dunnigan*, 944 F.2d at 182–85. There we held that the invocation of the two-level enhancement for obstruction of justice when a defendant who testified at trial is later convicted impermissibly burdens the defendant's right to testify in his own behalf. 944 F.2d at 185.

However, *Dunnigan* by its own terms does not apply to cases, like Pavlico's, in which pre-Sentencing Guidelines law applies. See 944 F.2d at 184–85. Rather, the *Dunnigan* opinion recognizes that the Supreme Court's holding in *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), permits sentencing judges to consider a defendant's perjury and controls in pre-Guideline cases. *Dunnigan*, 944 F.2d at 184–85. Thus, *Dunnigan* poses no obstacle to the district court's action in this case.

1539–40 (10th Cir.1990). This is as it should be, as we think it obvious that the trial judge, having observed the demeanor of witnesses and all of the evidence throughout the trial, is entirely capable of making a finding of perjury for sentencing purposes. Accordingly, we reject Pavlico's claim that he was denied proper notice.

Pavlico's second claim regarding the district judge's comments during sentencing involve the trial testimony of his wife, Michelle Pavlico. After reciting her name, address, and the like, her entire trial testimony was as follows: [App. 261]

[By Pavlico's counsel]:

Q: Now were you present during any conversations between your husband, Joseph Pavlico and George Laughrun concerning whether or not Joseph Pavlico should testify in the CTR trial?

A: Yes, I was. On several occasions, once in his office, Joe asking, he said, I would like to testify and he said, no, I advise you not to, they have to prove you guilty. Then two times during the trial, he met with us outside and gave Joe the same advice and once he even said, well, I've spoken to Judge Potter and he seems to think you're going to walk and I don't advise you to take the stand.

As we have already noted, the district judge found this testimony to be perjurious, a finding we will not disturb on appeal. Pavlico now argues that it was improper for the district judge to find that Pavlico suborned his wife's perjury and to consider that subornation in arriving at a sentence.

■ As we have seen, it is clear that the defendant's untruthfulness may be freely considered during sentencing. Though there is slight authority to the contrary, see *Harris v. Prast*, 459 F.Supp. 303, 305 (E.D.Wisc.1978), we believe the better view is that it is likewise permissible for a sentencing judge to infer from the testimony and demeanor of the witnesses at trial that the defendant coerced or allowed a defense witness to commit perjury. See *United States v. Campbell*, 684 F.2d 141, 154–55 (D.C.Cir.1982); *Fabiano v. Wheeler*, 583 F.2d 265, 269–70 (6th Cir.1978). To hold that a district judge is competent to find that a defendant perjured himself but not that a witness committed perjury as part of the defendant's overall scheme of deception in our opinion would defy logic. In the instant case Michelle Pavlico's entire testimony consisted of an enhanced version of the same story that her husband had unsuccessfully offered earlier in the trial. Under these circumstances we cannot say that the district judge erred in considering this fact in sentencing Pavlico.

■ Pavlico's remaining assignments of error merit brief attention. First, he asserts that the district judge took personal offense to the testimony of Michelle Pavlico regarding the judge's alleged conversation with attorney Laughrun, and that Pavlico's sentence amounts to an improper personal retaliation by the judge. Citing *United States v. Bakker*, 925 F.2d 728 (4th Cir.1991), Pavlico argues that the judge abused his discretion by using his role as sentencer to dispel any suggestion that he engaged in ex parte communications with Laughrun.

In addition to the above-noted comments made while passing sentence, Pavlico points to the following exchanges, which occurred following Michelle Pavlico's testimony, as evidence of the judge's "outrage[ ]", see Br. of Appellant at 21; App. at 261–64:

THE COURT: I don't know how to rebutt [sic] that [Michelle's testimony], but you have anything, Mr. Cogburn?

MR. RAY [Pavlico's counsel]: If Your Honor please, it wasn't to the truth of the matter....

THE COURT: All right, sir.

MR. COGBURN: I'm not even going to ask any questions of that, Judge.

THE COURT: All right, come down. Thank you. Is that all, Mr. Ray?

.    .    .    .    .

THE COURT: You say that was not offered for the truth of it, Mr. Ray? What was the purpose of it?

MR. RAY: The purpose is to rebutt [sic] that Mr. Laughrun had not told Joe Pavlico to stay off the stand—

THE COURT: The part about my discussing this case with Mr. Laughrun, is that correct?

MR. RAY: Please?

THE COURT: Even the part about my discussing the case with Mr. Laughrun?

MR. RAY: I don't believe you did and I didn't offer it for the truth of that.

THE COURT: All right, sir, come on up sir.

.     .     .     .     .

MR. RAY: One matter for Your Honor, if I may.

THE COURT: Yes, sir.

MR. RAY: I want to make absolutely clear with regard to the last witness [Michelle Pavlico] in the event that my statement in open Court did not make it clear, I do not believe Your Honor made the statement that the witness testified Mr. Laughrun made to her.

THE COURT: Well, I hope you believe that because that's something I never do and I was extremely disappointed, I guess is a mild word to use, that you put a witness up there to testify to something like that, Mr. Ray, you know better than that.

MR. RAY: It was for the purpose of what they were being told, not what you did.

THE COURT: Well, the jury doesn't understand things like that. You can tell them all you want to.

We are of opinion that these comments, even combined with those made during sentencing, fall far short of remarks we called "intemperate" that required resentencing in *Bakker*. In this case the district judge understandably was concerned about the impression that Michelle Pavlico's testimony might have left with the jury, and we cannot say that it was error to clarify the exact purpose for which that testimony

was offered. Moreover, as established above, the judge in no way acted improperly in mentioning his finding that both Pavlicos committed perjury. Thus, we must reject this argument.

■ Finally, Pavlico claims that his sentence must be vacated because it is so disproportionate both to his crimes and to the sentence of his co-defendant as to violate the Eighth Amendment's prohibition on cruel and unusual punishment. Pavlico received a 40–year prison term that is to run consecutively with the four-year sentence he received for the Reporting Act violations. Jacoby was sentenced to 20 years in prison in the instant case, a sentence that also is to run consecutively to his prior 15–year sentence. So Jacoby received a total of 35 years and Pavlico 44 years. Being a pre-Guidelines case, both Pavlico and Jacoby will be eligible for parole after serving ten years. See 18 U.S.C. § 4205(a) (applicable to offenses committed before November 1, 1987); *Warden v. Marrero*, 417 U.S. 653, 658, 94 S.Ct. 2532, 2535, 41 L.Ed.2d 383 (1974) ("... it could not be seriously argued that sentencing decisions are made without regard to the period of time a defendant must spend in prison before becoming eligible for parole....").

In *Harmelin v. Michigan*, — U.S. —, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), the United States Supreme Court recently addressed the extent to which the Eighth Amendment requires that sentences be proportionate to the criminal conduct for which they are imposed. Though that case failed to produce a majority opinion, it appears, under the rule in *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977), that "the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, — U.S. at —, 111 S.Ct. at 2705 (Kennedy, J., concurring in part and concurring in the judgment).[6]

---

**6.** We note that at the time Pavlico's conviction became final, prior to the decision in *Harmelin*, the law did not provide for proportionality re-

view of prison sentences shorter than life without possibility of parole. *United States v. La-Rouche*, 896 F.2d 815, 831–32 (4th Cir.), *cert.*

However, in the present case we need not delve further into the exact contours of Eighth Amendment proportionality review as it stands after *Harmelin,* nor need we determine whether Pavlico would be entitled to retroactive application of this newly-formulated proportionality analysis. We are confident that Pavlico's sentence would be proper and constitutional under any such standard. The district judge in this case found that Pavlico's culpability was "at a minimum equal to that of Defendant Jacoby, if not more." *Pavlico,* 741 F.Supp. at 585. Indeed, the evidence in the case showed that Jacoby's fraudulent enterprise realized its full potential only after Pavlico began aggressively soliciting investors in 1984. Moreover, in setting the sentences of the two defendants the court "took into consideration that Defendant Jacoby was sixty-four (64) years of age and suffered a life threatening heart condition." 741 F.Supp. at 585. Also, the court reasoned that Pavlico had received the lighter sentence in the Reporting Act trial, although it had found out he was equally or more to blame. In sum, in light of Pavlico's high degree of culpability and the district judge's announced reasons for the difference in the two sentences, we find Pavlico's Eighth Amendment challenge to be without merit. We emphasize that, in no event, do we imply that a difference in sentences gives rise to an Eighth Amendment claim of disproportionate sentencing.[7]

The judgment of the district court is accordingly AFFIRMED.

*denied,* 496 U.S. 927, 110 S.Ct. 2621, 110 L.Ed.2d 642 (1990).

7. It is well established in this circuit "that district courts are not obliged to make comparisons of the relative harshness of sentences imposed against various defendants." *United States v. Foutz,* 865 F.2d 617, 622 (4th Cir.1989).