**William P. VAN DAALWYK,
Petitioner–Appellant,**

v.

**UNITED STATES of America,
Respondent–Appellee.**

No. 92–2017.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 5, 1994.

Decided April 7, 1994.

Thomas L. Shriner, Jr. and Walter E. Zimmerman (argued), Foley & Lardner, Milwaukee, WI, for petitioner-appellant.

Elsa Lamelas and Chris R. Larsen (argued), Asst. U.S. Attys., Office of the U.S. Atty., Milwaukee, WI, for respondent-appellee.

Before POSNER, Chief Judge, and FAIRCHILD and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

The issue presented in this case is whether the retroactivity principles articulated by a plurality of the Supreme Court in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and adopted by majorities in *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), *Butler v. McKellar,* 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990), and *Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), are applicable to collateral challenges to federal convictions under 28 U.S.C. § 2255. We conclude that they are and accordingly affirm the district court's denial of relief.

■ Subsequent to William Van Daalwyk's conviction in 1986 for drug related offenses and our affirmance of his conviction in 1988, *see United States v. Van Daalwyk,* 840 F.2d 494 (7th Cir.1988), (and long after *certiorari* could have been sought) the Supreme Court held in *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), that a criminal defendant has standing under the Equal Protection Clause to challenge prosecutorial use of racially discriminatory peremptory challenges to strike jurors who do not share the defendant's race. Less than three months after *Powers* was decided, Van Daalwyk, who is white, filed a § 2255 motion challenging the government's peremptory strikes of two black venirepersons during jury selection for his 1986 trial. Because *Powers* announced a new constitutional rule of criminal procedure, *see Holland v. McGinnis,* 963 F.2d 1044, 1052–57 (7th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1053, 122 L.Ed.2d 360 (1993), Van Daalwyk's attempt to benefit from its retroactive application is barred if *Teague's* new-rule rule— generally forbidding the announcement or application of new constitutional rules on *habeas corpus* review of state convictions—is applicable to collateral attacks on federal convictions.

■ In *Teague* and its progeny, the Supreme Court discarded its previous practice of entertaining habeas petitioners' requests for new constitutional rules of criminal procedure while postponing for future determination whether to apply such rules retroactively across the board to other prisoners mounting collateral challenges to their convictions. In so doing, the Court adopted much of Justice Harlan's proposed approaches to the announcement and retroactive application of new constitutional rules on collateral review.[1] Building on Justice Harlan's separate opinions in *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), and *Mackey v. United States,* 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971), the plurality opinion in *Teague* declared that retroactivity should be a threshold question for the proposal of new rules on habeas review of state convictions. If all state prisoners whose convictions are final cannot benefit from a rule, none should, and thus (in light of Article III's case-or-controversy requirement) none can propose such a rule in the first instance.[2]

In conducting its threshold retroactivity analysis, the *Teague* court worked another,

---

1. In *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Court adopted Justice Harlan's view that newly declared constitutional rules of procedure should always be applied to cases pending on direct review. *See id.* at 328, 107 S.Ct. at 716.

2. A conviction is "final" if the availability of appeal is exhausted and the time for petition for certiorari has elapsed. *See Teague,* 489 U.S. at 295, 109 S.Ct. at 1067.

somewhat quieter alteration of existing law. Previously, the issue of retroactive application of a new decision to a case on collateral review was resolved by applying an open-ended, three-factor balancing test. *See Allen v. Hardy*, 478 U.S. 255, 258, 106 S.Ct. 2878, 2880, 92 L.Ed.2d 199 (1986) (weighing "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards") (quoting *Solem v. Stumes*, 465 U.S. 638, 643, 104 S.Ct. 1338, 1341–42, 79 L.Ed.2d 579 (1984) (quoting *Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967))); *see also Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737–38, 14 L.Ed.2d 601 (1965).[3] The *Teague* plurality distanced itself from the *Stovall* test, declaring instead that a new rule—that is (with several exceptions [4]), a nonretroactive rule—is one "not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070. In later cases, the Court made clear that the *Teague* formulation and its exceptions were indeed intended to constitute the general test of retroactivity for collateral challenges to state convictions, applicable not just to attempts to have new rules declared but also efforts to benefit from existing new rules which were promulgated after a challenged conviction became final. *See, e.g., Penry*, 492 U.S. at 313, 109 S.Ct. at 2943–44.

Although Justice Harlan issued his predecessor opinions to *Teague* in cases presenting collateral challenges to *federal* convictions under § 2255 and did not "propose to make any distinction, for retroactivity purposes, between state and federal prisoners seeking collateral relief," *Mackey*, 401 U.S. at 681 n. 1, 91 S.Ct. at 1174 n. 1 (Harlan, J., concurring in the judgments in part and dissenting in part), Van Daalwyk points out that *Teague* and the cases which followed only dealt with federal habeas corpus challenges to *state* convictions. He argues that their retroactivity principles are inapplicable to his attempt to collaterally attack his federal conviction on the basis of the *Powers* new rule. Federalism concerns indeed were not ignored by the Court as its recent retroactivity jurisprudence took shape. *Teague* itself noted that the deterrence rationale behind federal habeas oversight of state court protection of federal rights loses much of its force when new rules are applied retroactively to convictions already final.[5] *See Teague*, 489 U.S. at 310, 109 S.Ct. at 1075. Similarly, " '[t]he new rule principle ... validates reasonable, good-faith interpretations of existing precedents made by state courts' ... and thus effectuates the States' interest in the finality of criminal convictions and fosters comity between federal and state courts." *Gilmore v. Taylor*, ——— U.S. ———, ———, 113 S.Ct. 2112, 2116, 124 L.Ed.2d 306 (1993) (quoting *Butler*, 494 U.S. at 414, 110 S.Ct. at 1217). The Court has also stated that "interests in finality, predictability, and comity underl[ie] our new rule jurisprudence." *Stringer v. Black*, ——— U.S.

---

3. From *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), and *Stovall* until *Griffith, see supra* note 1, this standard also governed the retroactivity analysis for cases pending on direct review (except for cases involving the application of intervening Fourth Amendment, *see United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982) (adopting Harlan approach), and Fifth Amendment decisions, *see Shea v. Louisiana*, 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985) (same)).

4. New rules will be applied retroactively to prisoners whose convictions were final when they were announced if they place " 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe,' " *see Teague*, 489 U.S. at 311, 109 S.Ct. at 1075 (quoting *Mackey*, 401 U.S. at 692,

91 S.Ct. at 1179–80 (Harlan, J., concurring in judgments in part and dissenting in part)), or if they are "watershed rules of criminal procedure," new procedures "without which the likelihood of an accurate conviction is seriously diminished." *Id.* at 311, 313, 109 S.Ct. at 1076, 1076–77.

5. The deterrent function of collateral review is to an extent, however, a general one, not limited to regulating state court conduct alone. "[T]he threat of habeas serves as a necessary additional incentive for trial and appellate courts throughout the land to conduct their proceedings in a manner consistent with established constitutional standards." *Desist v. United States*, 394 U.S. 244, 262–63, 89 S.Ct. 1030, 1040–41, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting).

——, ——, 112 S.Ct. 1130, 1135, 117 L.Ed.2d 367 (1992).

It is clear, however, that federalism in the abstract was not the moving force behind *Teague.* Rather the desire to maintain a healthy respect for the finality of state judgments rendered in accordance with contemporaneous constitutional norms motivated the Court to preclude later attacks on such convictions based on subsequent changes in doctrine. *See Teague,* 489 U.S. at 309–10, 109 S.Ct. at 1074–75. As *Teague* was a habeas case, regard for finality dovetailed with the general hesitancy of federal courts to intrude upon the States' administration of their criminal laws. *See id.* at 310, 109 S.Ct. at 1075. Yet society's interest that at some point its dispositions of criminal prosecutions should no longer be disturbed by later changes in ceaselessly evolving procedural law is not peculiar to state criminal proceedings. Federal convictions implicate like issues of repose as "[i]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures," *United States v. Addonizio,* 442 U.S. 178, 184 n. 11, 99 S.Ct. 2235, 2240 n. 11, 60 L.Ed.2d 805 (1979) and because retroactivity doctrine is at root concerned with finality,[6] similar principles should apply to federal prisoners' collateral challenges premised on subsequent developments in the law. (Indeed, *Teague* "adopt[ed] Justice Harlan's approach to retroactivity for cases on collateral review," *Teague,* 489 U.S. at 292, 109 S.Ct. at 1065, which was developed in the context of a 2255 attack on a federal conviction.)

Of course, one could argue that federal convictions are *never* final because a 2255 collateral challenge procedurally consists of a motion in the underlying criminal case before the original sentencing court and not a separate civil action a la § 2254, and Van Daalwyk does make some intimations along those lines in his briefs.[7] One problem with this theory is that it is already clearly established that strong finality values attach to federal convictions when avenues of direct review are closed; after all, section 2255 motions are vehicles for *collateral* relief. *See United States v. Frady,* 456 U.S. 152, 164–65, 102 S.Ct. 1584, 1592–93, 71 L.Ed.2d 816 (1982) ("Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present

---

6. Overuse has lent to the term "finality" a somewhat banal ring. The interest, however, is a substantial one:

> At some point, the criminal process, if it is to function at all, must turn its attention from whether a man ought properly to be incarcerated to how he is to be treated once convicted. If law, criminal or otherwise, is worth having and enforcing, it must at some time provide a definitive answer to the question litigants present or else it never provides an answer at all. Surely it is an unpleasant task to strip a man of his freedom and subject him to institutional restraints. But this does not mean that in so doing, we should always be halting or tentative. No one, not criminal defendants, not the judicial system, not society as a whole is benefitted by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved.

*Mackey,* 401 U.S. at 690–91, 91 S.Ct. at 1178–79 (Harlan, J., concurring in the judgments in part and dissenting in part).

7. One might try to limit this approach by asserting that federal convictions do become final but only once a prisoner files his first 2255 motion because abuse of the writ principles would ordinarily bar future motions. *Cf. McClesky v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (habeas case); *see United States v. Fallon,* 992 F.2d 212, 213 (8th Cir.1993) (adopting *McClesky* cause-and-prejudice standard as 2255 abuse of writ rule); *United States v. Flores,* 981 F.2d 231, 234–35 (5th Cir.1993) (same); *Andiarena v. United States,* 967 F.2d 715, 717 (1st Cir. 1992) (same); *United States v. MacDonald,* 966 F.2d 854, 859 n. 8 (4th Cir.) (same), *cert. denied,* —— U.S. ——, 113 S.Ct. 606, 121 L.Ed.2d 542 (1992); *see generally, Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) (indicating the substantial equivalence of *habeas* and 2255 abuse of the writ rules). Any supposed concession to the value of finality this tack purports to make is largely illusory, however, because basing a successive 2255 motion on the emergence of a new legal rule will often constitute cause for forgiving the failure to raise the claim in an earlier motion, *see Reed v. Ross,* 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984) (although *Reed* involved the *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), cause and prejudice test for analyzing the consequence in 2254 proceedings of state procedural defaults, by adopting that test wholesale *McClesky* makes *Reed* directly relevant).

his federal claims to a federal forum. Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless postconviction collateral attacks. To the contrary, a final judgment commands respect."); *United States v. Addonizio,* 442 U.S. 178, 184, 99 S.Ct. 2235, 2239–40, 60 L.Ed.2d 805 (1979) ("When Congress enacted § 2255 in 1948, it simplified the procedure for making a collateral attack on a final judgment entered in a federal criminal case, but it did not purport to modify the basic distinction between direct review and collateral review."); *Johnson v. United States,* 805 F.2d 1284, 1287 (7th Cir. 1986) ("The legislative history shows, and the Supreme Court has held, that the purpose of section 2255 was 'simply to provide in the sentencing court a remedy exactly commensurate with that which had been previously available by habeas corpus in the court of the district where the prisoner was confined.'") (quoting *Hill v. United States,* 368 U.S. 424, 427, 82 S.Ct. 468, 470–71, 7 L.Ed.2d 417 (1962)). Another problem with this theory is its inevitable consequence that all constitutional decisions would be fully retroactive for all federal prisoners, a result unequivocally rejected by both sides of the Harlan debate. *See, e.g., Mackey v. United States,* 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971), *Elkanich v. United States,* 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), *Halliday v. United States,* 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969).

Van Daalwyk, however, does not propose an alternative standard to *Teague*'s for determining when new decisions about criminal procedure will and will not be applied retroactively to federal prisoners on collateral review. Presumably he would favor one more forgiving than *Teague*'s on the theory that the value of finality not buttressed by comity considerations should allow a more expansive attitude toward the retrospective application of new decisions. We, however, do not believe that rejecting *Teague* and placing in its stead a resurrected *Linkletter / Stovall* type balancing test to serve special duty in the federal realm or concocting our own new standard of retroactivity for federal convictions is a prudent course. First of all, we are not inclined to return retroactivity analysis to "considerations that are appropriate enough for a legislative body." *Mackey,* 401 U.S. at 677, 91 S.Ct. at 1172 (commenting on the nature of the factors balanced in the old approach). *Teague* abandoned this remnant of *Linkletter* and adjusted the inquiry so that the controlling principles are those "that comport with the judicial function," *id.;* evaluating a rule for its pedigree in precedent is, as much as any task, safely within the confines of judicial competence. Moreover, we do not think that federal prisoners who challenge their convictions on collateral review *should* be entitled to retroactive application of decisions which would not be retroactively applied to state prisoners. To begin with, it is "clear that § 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States,* 417 U.S. 333, 343, 94 S.Ct. 2298, 2304, 41 L.Ed.2d 109 (1974). Further, to allow federal prisoners on collateral review the benefit of a new rule unavailable to similarly situated state prisoners is simply inequitable and, in our view, not justified merely by the absence of like comity concerns. *See Gilberti v. United States,* 917 F.2d 92, 95 (2nd Cir.1990); *Elortegui v. United States,* 743 F.Supp. 828, 831 (S.D.Fla.1990), *aff'd,* 943 F.2d 1317 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1229, 117 L.Ed.2d 464 (1992). A consistent and principled approach to retroactivity requires that all questions of retroactivity be resolved by reference to one standard. We therefore hold that *Teague* applies to attempts by federal prisoners under § 2255 to benefit from constitutional decisions of criminal procedure handed down after their convictions are no longer subject to direct review. Accordingly, the judgment of the district court is affirmed.