**John Chatric FERGUSON, Petitioner,**

**v.**

**UNITED STATES of America, Respondent.**

**No. CV 95–5973 ER.**

United States District Court, C.D. California.

Dec. 27, 1995.

Nora M. Manella, U.S. Atty. and Patricia Donahue, Asst. U.S. Atty., Office of the U.S. Attorney, Los Angeles, CA, for Petitioner.

John C. Ferguson, N. Las Vegas, NV, Pro Se.

## MEMORANDUM OPINION AND ORDER DENYING PETITIONER'S MOTION TO VACATE HIS CONVICTION

RAFEEDIE, District Judge.

### Introduction

Petitioner John Chatric Ferguson is currently serving a 101 month sentence in federal prison for violations of the narcotics laws. After Ferguson pleaded guilty, the United States instituted civil proceedings to forfeit the property used in the commission of the offense. Ferguson now seeks to vacate his conviction on the ground that the civil forfeiture violated his right to be free from double jeopardy. His argument is based on two cases, *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir.1994), and *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), that together established a new rule within the meaning of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The Court holds that he is barred from relying on these cases due to the *Teague* nonretroactivity rule, and therefore his petition is DENIED.

### Background Facts

Ferguson was indicted on April 5, 1991, on one count of conspiracy to distribute cocaine, 21 U.S.C. § 846, one count of possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), and one count of carrying a firearm during a crime of violation, 18 U.S.C. § 924(c). Ferguson pleaded guilty on June 17, 1991, but due to a number of requests for continuances by his retained counsel, was not sentenced until June 8, 1992. At that time, the Court imposed a sentence of 101 months.

Meanwhile, the United States began forfeiture proceedings against Ferguson's Pontiac Fiero on May 9, 1991, and against his cellular telephone on May 29, 1991. Since Ferguson filed no claims, the government forfeited his car on June 14, 1991, and his telephone on July 5, 1991.

### Discussion

Ferguson's claim of double jeopardy rests on *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir.1994), and *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), which together hold that civil forfeitures constitute punishment within the meaning of the Double Jeopardy Clause. Although the government argues that neither case applies here because administrative forfeitures do not count as civil forfeitures, the Court finds that it need not reach that determination.[1]

---

1. Similarly, the Court notes that even if Ferguson prevailed on his claim of double jeopardy, he would not be entitled to vacate his conviction, since the conviction was obtained prior to the forfeiture. However, since *Teague* presents a threshold issue, the Court need not address this issue fully.

Instead, for the reasons that follow, the Court concludes that the *Teague* nonretroactivity rule applies to federal prisoners; that *Austin* and *$405,089.23* established new rules; and that Ferguson is *Teague*-barred from relying on those cases for his double jeopardy claim.[2]

The Court also finds Ferguson's claims of a violation of his right to a speedy trial and of ineffective assistance of counsel to be without merit.

## I. The Teague Nonretroactivity Bar and Federal Prisoners

### A. The Rule Against Nonretroactivity

In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court announced that "new rules" would not be applied on habeas review. Although that portion of *Teague* garnered only four votes, *Teague* has since been ratified by a majority of the Supreme Court. *Caspari v. Bohlen*, — U.S. —, —, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994); *Stringer v. Black*, 503 U.S. 222, 234–36, 112 S.Ct. 1130, 1139, 117 L.Ed.2d 367 (1992).

Stated simply, *Teague* "prevents a federal court from granting habeas corpus relief to a state prisoner based on a rule announced after his conviction and sentence became final." *Bohlen*, — U.S. at —, 114 S.Ct. at 953. Moreover, *Teague* presents a threshold issue, and while it is not jurisdictional, a federal court may raise the *Teague* bar even if the state does not rely on it. *Id.*

### B. Federal Prisoners

At present, it is unsettled in the Ninth Circuit whether the *Teague* nonretroactivity rule applies to federal prisoners. *Walter v. United States*, 969 F.2d 814, 817 (9th Cir. 1992). A survey of other courts indicates that a number have held that *Teague* applies to petitions by federal prisoners. *Van Daalwyk v. United States*, 21 F.3d 179, 180 (7th Cir.1994); *Gilberti v. United States*, 917 F.2d 92, 94 (2d Cir.1990).[3] One district court case, *United States v. Clawson*, 842 F.Supp. 428, 432 (D.Or.1994), has questioned whether *Teague* applies to federal prisoners.

Of these cases, *Van Daalwyk* is the most comprehensive. The specific issue presented in *Van Daalwyk* was whether *Teague* applied to federal prisoners, and after an extensive analysis, the Seventh Circuit concluded that it did. Acknowledging that *Teague* itself contained language suggesting that federal-state comity was a concern of the Supreme Court, the *Van Daalwyk* court nevertheless observed that the true motivating force behind *Teague* was "the desire to maintain a healthy respect for the finality of state judgments rendered in accordance with contemporaneous constitutional norms." 21 F.3d at 181–82. This desire for respect for finality applied with as much force for federal convictions as for state convictions. *Id.*

*Teague* should also apply to federal prisoners because of the opposite side of comity. The writ of habeas corpus, whether rightly or wrongly, is seen as a way for federal courts to monitor state court rulings on federal issues. *Teague*, 489 U.S. at 306, 109 S.Ct. at 1073.[4] Unless the Supreme Court grants

**2.** The Court acknowledges that neither party has raised this *Teague* issue. However, the Court notes that in *Teague* itself, retroactivity was raised *sua sponte.* 489 U.S. at 326, 109 S.Ct. at 1083–84 (Marshall, J., dissenting).

**3.** Other cases have simply applied *Teague* without comment. *United States v. Judge*, 944 F.2d 523, 525 (9th Cir.1991), *cert. denied*, 504 U.S. 927, 112 S.Ct. 1988, 118 L.Ed.2d 585 (1992); *United States v. Dashney*, 52 F.3d 298, 299 (10th Cir.1995) (assuming that *Teague* applies to federal prisoners, but that it was not applicable here because the case involved statutory construction); *United States v. Pavlico*, 961 F.2d 440, 443 (4th Cir.) (noting that *Teague* is a procedural obstacle facing federal prisoners), *cert. denied*, 506 U.S. 848, 113 S.Ct. 144, 121 L.Ed.2d 96

(1992); *United States v. Ayala*, 894 F.2d 425, 429 n. 8 (D.C.Cir.1990) (assuming that *Teague's* "painstakingly formulated" rule applies to federal prisoners); *United States v. Makaweo*, 730 F.Supp. 1016, 1017 (D.Haw.1990) (Tashima, J., sitting by designation), *aff'd*, 956 F.2d 275 (9th Cir.1992) (unpublished opinion).

**4.** In *Teague*, the Supreme Court noted that ("the threat of habeas serves as a necessary additional incentive for trial and appellate courts throughout the land to conduct their proceedings in a manner consistent with established constitutional standards") (citation omitted). *See also* Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv.L.Rev. 441, 514, 517 (1963).

*certiorari* on direct review, an unlikely event since it happens in less than 2 percent of cases,[5] habeas is the only avenue for federal court review of state convictions. However, federal courts obviously need not monitor themselves through collateral review, since federal prisoners have federal courts reviewing their convictions at every stage.

Accordingly, the Court concludes that *Teague* does apply to federal prisoners.

## II. Did Austin Establish a New Rule?

The next issue is determining whether *Teague* bars the retroactive application of *Austin* and *$405,089.23*. This issue requires an analysis of previous forfeiture cases, in order to determine whether *Austin* was dictated by precedent.

### A. History of Forfeiture Case Law

#### 1. 89 Firearms

In 1984, the Supreme Court held that civil forfeitures were not punishment within the meaning of the Double Jeopardy Clause. *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 363, 104 S.Ct. 1099, 1105, 79 L.Ed.2d 361 (1984). *89 Firearms* relied on the fact that Congress intended for civil forfeiture to be "remedial," rather than "punitive." At the time, the Supreme Court deferred to Congress' preference, as expressed through such characterization, a test developed in *United States v. Ward*, 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980).

#### 2. United States v. Halper

However, five years later, the Supreme Court reversed course. In *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), it held that the label attached to the civil sanction was not important. Instead, the Supreme Court shifted to an approach of "assessing the character of the actual sanctions imposed on the individual by the machinery of the state." *Id.* at 447, 109 S.Ct. at 1901.

The precise question in *Halper* was whether a monetary judgment through a civil suit by the United States under the False Claims Act placed the defendant in double jeopardy if it followed a criminal prosecution for the same criminal actions. Halper was convicted of 65 counts of making false claims against the federal government for inflating the cost of medical services provided by the company he worked for. The total loss to the government was $585, or $9 per claim. *Id.* at 437, 109 S.Ct. at 1895–96.

Following conviction, the government then brought a civil action under the False Claims Act. Since Halper had already been convicted in a criminal prosecution, his liability was established beyond a reasonable doubt and sufficiently to satisfy the lower civil standard. The district court granted summary judgment against Halper. However, the civil penalty under the Act was $2,000 per violation, or $130,000 in Halper's case. *Id.* at 438, 109 S.Ct. at 1896.

The Supreme Court distinguished previous cases that had allowed civil penalties following convictions on the grounds that those cases involved remedial measures.[6] The Supreme Court synthesized from those cases:

> The relevant teaching of these cases is that the Government is entitled to rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment for the purpose of double jeopardy analysis.

*Id.* at 446, 109 S.Ct. at 1900. In Halper's case, however, the civil sanction of $130,000 was grossly out of proportion to the loss he caused, $585. Such a gross disparity indicated that the sanction was not just remedial, but also punitive. The Supreme Court wrote:

> We therefore hold that under the Double Jeopardy Clause a defendant who already

---

5. In 1992, there were approximately 2000 paid cases and 4240 in forma pauperis petitions for *certiorari;* the Supreme Court granted review to 97 cases.

6. Those cases were *Helvering v. Mitchell*, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938); *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943); and *Rex Trailer Co. v. United States*, 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956).

has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

*Id.* at 448–49, 109 S.Ct. at 1902. However, the Supreme Court tempered its ruling with the observation that its rule was "for the rare case ... where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." *Id.* at 449, 109 S.Ct. at 1902.

### 3. *Austin v. United States*

*Halper* provided the basis for a subsequent case, *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), in which the Supreme Court held that civil forfeiture under 21 U.S.C. § 881 constituted "punishment" for the purposes of the Eighth Amendment's prohibition against Excessive Fines. At ——, 113 S.Ct. at 2812. The Supreme Court first concluded that historically, forfeiture was viewed as punitive in nature, not remedial. It also found that the forfeiture statutes provide for an "innocent owner" defense, suggesting that the statutes focused on the culpability of the defendant "in a way that makes them look more like punishment, not less." *Id.* at ——–——, 113 S.Ct. at 2810–11. The Supreme Court also noted that the legislative history indicated that Congress had punishment in mind. *Id.* at ——, 113 S.Ct. at 2811. For those reasons, the Supreme Court held that civil forfeiture counts as punishment for Eighth Amendment purposes.

### 4. *$405,089.23*

In *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (9th Cir.1994), the Ninth Circuit held that since forfeiture was considered punishment for Eighth Amendment purposes under *Austin*, it had to be considered punishment for Fifth Amendment purposes also. As a result, civil forfeiture falls

within the Fifth Amendment prohibition against double jeopardy.

### B. Application of *Teague's* New Rule Definition

In *Caspari v. Bohlen*, the Supreme Court set forth the application of *Teague* as follows:

(1) first, determine the date the conviction and sentence became final;

(2) next, determine if the rule sought is new by reference to the date of finality;

(3) finally, determine whether a rule, if new, would fall within the two exceptions to *Teague*. —— U.S. at ——, 114 S.Ct. at 953.

### 1. Date of Finality

■ For *Teague* purposes, "[a] state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Bohlen,* —— U.S. at ——, 114 S.Ct. at 953 (citing *Griffith v. Kentucky,* 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 712 n. 6, 93 L.Ed.2d 649 (1987)).[7]

In this case, Ferguson did not appeal his conviction. His conviction therefore became final ten days after judgment was rendered and a sentence pronounced. *See* Fed.R.App. Proc. 4(b) (requiring notice of appeal within ten days of entry of judgment). Ferguson's judgment and sentencing was signed on June 10, 1992, so his conviction became final on June 20, 1992. *Austin* was decided on June 28, 1993, more than a year after the date of finality.

### 2. New Rules

■ A rule is new "if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Id.* (quoting *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070). Without question, the rule concerning "new rules" has proven elusive. In *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), the Supreme Court rede-

---

**7.** A petition for *certiorari* must be filed within 90 days of the entry of judgment in the Court of Appeals. S.Ct.R. 13.

fined a new rule as one that broke new ground or imposed a new obligation on the government. *Id.* at 314, 109 S.Ct. at 2944. In *Butler v. McKellar,* 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990), the Supreme Court held that a rule that "was susceptible to debate among reasonable minds" was new. *Id.* at 415, 110 S.Ct. at 1217.

However, in *Caspari v. Bohlen,* —— U.S. ——, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994), the Supreme Court returned to dictated or compelled by precedent language that it had used in *Teague. Id.* at ——, 114 S.Ct. at 953. Therefore, the Court will use this approach in its analysis of the novelty of *Austin.*[8]

■ Under this analysis, the Court concludes that *Austin* was a new rule, because it was not dictated by precedent. To begin with, a conclusion that *Austin* dictated the result in *$405,089.23* means that *Austin* essentially overruled *89 Firearms.* The holding of *89 Firearms* was that civil forfeiture was not punishment for double jeopardy purposes. If *Austin* compels the result in *$405,-089.23,* then *Austin* compelled the holding that forfeiture is punishment for double jeopardy purposes.

Thus, either *Austin* or *$405,089.23* would appear to qualify as a new rule. Admittedly, *Austin* was a 9–0 decision. However, the *Teague* rule does not take into account the vote count. *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), was another 9–0 decision, and yet, it was obviously a new rule, given that it overruled *Plessy v. Ferguson,* 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896). *Brown,* 347 U.S. at 494–95, 74 S.Ct. at 691–92.

Nor was *Austin* dictated by *Halper. Halper* provided a new framework for determining whether a given sanction constitutes punishment or remediation. Rather than accept Congressional designation or labelling of the sanction, federal courts are to consider the practical effect and nature of the sanction.

This holding, however, did not dictate the result in *Austin.* The Supreme Court was not compelled to hold in *Austin* that civil forfeiture *always* constitutes punishment, regardless of the value of the property forfeited. The holding that *Halper* dictated was that civil forfeiture constitutes punishment when it is grossly disproportionate to the expense incurred by the government in prosecuting the case. Moreover, *Halper* suggested that this sort of determination would be made on a case-by-case basis when it stated: "[w]e must leave to the trial court the discretion to determine on the basis of such an accounting the size of a civil sanction the Government may receive without crossing the line between remedy and punishment." *Halper,* 490 U.S. at 450, 109 S.Ct. at 1902.

*Austin,* however, has taken that discretion away from the district courts and replaced it with a determination that civil forfeiture is always punishment. While this holding is not inconsistent with that of *Halper,* it cannot be said that it was dictated by *Halper.*

Accordingly, the Court concludes that *Austin* constitutes a new rule.

### C.  *Teague Exceptions*

■ There are two exceptions to the *Teague* rule of nonretroactivity on collateral review. New rules will be applied retroactively on collateral review if they either (1) place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," *Teague,* 489 U.S. at 307, 109 S.Ct. at 1073; or (2) constitute " 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle v. Parks,* 494 U.S. 484, 495, 110 S.Ct. 1257, 1264, 108 L.Ed.2d 415 (1990).

Before the Court can conclude that *Teague* bars these petitioners from receiving retroactive application of *Austin,* the Court must consider whether *Austin* falls within either of the narrow exceptions to the nonretroactivity rule.

#### 1.  *Primary Conduct*

The first *Teague* exception is that new rules can be applied retroactively if they place "certain kinds of primary, private indi-

---

**8.**  The Court need not address the issue of whether *$405,089.23* was a new rule, since even if *$405,089.23* is not a new rule, it follows *Austin,* and *Austin* was decided after Ferguson's conviction became final.

vidual conduct beyond the power of the criminal law-making authority to proscribe." *Teague v. Lane*, 489 U.S. 288, 311, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989) (quoting *Mackey v. United States*, 401 U.S. 667, 692, 91 S.Ct. 1171, 1179, 28 L.Ed.2d 388 (1971) (Harlan, J., concurring in part and dissenting in part)).

■ *Austin* did not place any conduct beyond the power of the government to proscribe. Even after *Austin*, the government remains free to prosecute and incarcerate defendants for narcotics offenses. *Austin* does not accord constitutional protection to the activity of distribution of controlled substances. Thus, the first *Teague* exception does not apply.

### 2. *Fundamental Fairness and Accuracy*

The second *Teague* exception is that a new rule can be applied retroactively if it constitutes a " 'watershed rule[ ] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Caspari v. Bohlen*, —— U.S. ——, ——, 114 S.Ct. 948, 956, 127 L.Ed.2d 236 (1994) (quoting *Saffle v. Parks*, 494 U.S. 484, 495, 110 S.Ct. 1257, 1263–64, 108 L.Ed.2d 415 (1990)).

*Austin* does not lead to more accurate results in determining whether any of the petitioners are actually guilty of the crimes for which they were indicted. Moreover, there is a presumption that it is "unlikely that many such components of basic due process have yet to emerge." *Teague*, 489 U.S. at 313, 109 S.Ct. at 1077. Thus, the second *Teague* exception does not apply to *Austin* either.

### D. *Conclusion*

The Court holds that *Austin* created a new rule within the meaning of *Teague v. Lane*, and that since Ferguson's conviction became final before *Austin* was handed down, Ferguson is barred from relying on it or its progeny. Without *Austin* and *$405,089.23*, Ferguson's double jeopardy claim is without merit. Therefore, the Court DENIES this claim.

### III. *Petitioner's Other Claims*

Ferguson raises two other issues. First, he claims that his right to a speedy trial was violated. Second, he claims that his counsel was ineffective for failing to act on the violation of the right to a speedy trial.

### A. *Speedy Trial Claim*

■ Ferguson pleaded guilty on June 17, 1991, to one count of conspiracy to distribute cocaine and one count of possession of cocaine with intent to distribute. A defendant who pleads guilty waives his right to claim a violation of the Speedy Trial Act. *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (per curiam). Thus, Ferguson claim is meritless.

### B. *Ineffective Assistance of Counsel Claim*

■ Since Ferguson has no claim for a violation of his right to a speedy trial, there has been no ineffective assistance of counsel. However, the Court notes that the docket sheet, attached as Exhibit K to Ferguson's motion, indicates that Ferguson pleaded guilty on June 17, 1991, and not on April 6, 1992, as Ferguson contends in his motion. The docket sheet indicates that on April 6, 1992, the Court attempted to sentence Ferguson, but that his counsel requested a continuance.

### C. *Conclusion*

Accordingly, the Court DENIES Ferguson's motion to vacate his sentence based on his claims of a violation of his right to a speedy trial and of ineffective assistance of counsel.

IT IS SO ORDERED.