**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Wilfredo Mario MARTINEZ,**
**Defendant–Appellant.**

**No. 96–6801.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 30, 1998.

Decided March 19, 1998.

**ARGUED:** James A. McLaughlin, College of Law, West Virginia University, Morgantown, WV, for Appellant.   Michael R. Smythers, Assistant U.S. Attorney, Norfolk, VA, for Appellee.   **ON BRIEF:** Helen F. Fahey, U.S. Attorney, Norfolk, VA, for Appellee.

Before WILKINSON, Chief Judge, BUTZNER, Senior Circuit Judge, and MICHAEL, Senior United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by published opinion.   Chief Judge WILKINSON wrote the opinion, in which Senior Judge BUTZNER and Senior Judge MICHAEL joined.

## OPINION

WILKINSON, Chief Judge:

After failing to appear for trial, Wilfredo Martinez was tried *in absentia* and convicted of engagement in a continuing criminal enterprise, 21 U.S.C. § 848, interstate travel with intent to facilitate cocaine distribution, 18 U.S.C. § 1952, and cocaine distribution, 21 U.S.C. § 841. After his conviction became final, the Supreme Court held in *Crosby v. United States*, 506 U.S. 255, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993), that Fed.R.Crim.P. 43 prohibits the trial *in absentia* of a defendant who is not present at the beginning of trial. Martinez brought a motion for collateral relief under 28 U.S.C. § 2255 claiming *Crosby* required that his conviction be set aside. The district court denied relief, holding that under *Teague v. Lane*, 489 U.S. 288, 299–316, 109 S.Ct. 1060, 1069–78, 103 L.Ed.2d 334 (1989) (plurality opinion), *Crosby* could not be applied retroactively to Martinez's case. Because we agree that *Crosby* announced a new rule within the meaning of *Teague* and therefore cannot entitle Martinez to collateral relief, we affirm the judgment of the district court.

### I.

Martinez was indicted in November 1987 on seven counts related to a cocaine distribution conspiracy. On February 10, 1988, he appeared before a magistrate, waived arraignment, and pled not guilty. In his presence, Martinez's trial was set for April 11, 1988. Although he was initially permitted to remain free on a $100,000 bond, Martinez's bond was revoked when he failed to appear for a scheduled hearing on March 21, 1988. After the hearing, Miami police found Martinez's residence empty and four days of newspapers lying in front of his house. F.B.I. agents also learned that a moving van had recently been used to empty Martinez's residence of furniture. Martinez then failed to appear at another hearing set for March 28, 1988. Finally, on April 11, 1988, he did not appear for trial. The district court ordered Martinez's bond forfeited.

Martinez's attorney moved for a continuance. Upon questioning by the district court, defense counsel conceded: "They [Martinez and his mother] knew of the trial date. I had gone over the trial date with them. In fact, I told them to make airplane reservations in advance.... No question they knew of the trial date." Additionally, the prosecutor explained that witnesses had been brought in from as far as Florida and Indiana for the trial and further delay would unnecessarily expose government witnesses to danger. Finding there to be no chance of Martinez appearing for trial, and assessing the prejudice to the government as great, the district court denied the motion for continuance and began Martinez's trial in his absence. After a one-day trial, the jury convicted Martinez of all counts. Authorities apprehended Martinez in Florida in December 1988 and returned him to Virginia. On April 3, 1989, the district court sentenced Martinez to twenty years in prison and a $10,000 fine.

Martinez appealed his conviction, in part, on the ground that his trial *in absentia* was error. This court rejected his appeal on the grounds that his failure to show up for a trial which he knew would take place constituted a voluntary waiver of his right to be present. *United States v. Martinez*, No. 89–5805, 1991 WL 89932 (4th Cir.1991). Martinez then filed a petition for a writ of certiorari in the United States Supreme Court, which was denied on October 7, 1991. *Martinez v. United States*, 502 U.S. 897, 112 S.Ct. 272, 116 L.Ed.2d 224 (1991). Martinez filed the present § 2255 motion claiming that the Supreme Court's decision in *Crosby* requires that his conviction be set aside. The district court disagreed and denied his motion. Martinez now appeals.

### II.

Martinez's conviction became final on October 7, 1991, when the Supreme Court denied his petition for a writ of certiorari. *Crosby*, the decision from which Martinez seeks to benefit, was decided on January 13, 1993.

In *Crosby*, the Supreme Court considered whether a criminal defendant could be tried *in absentia* after a knowing and voluntary waiver of the right to be present at the

commencement of trial. At the time, Rule 43 stated, in relevant part:

(a) *Presence Required.* The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

(b) *Continued Presence Not Required.* The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present,

(1) is voluntarily absent after the trial has commenced....

In *Crosby*, the Eighth Circuit Court of Appeals had concluded, like other Courts of Appeals, that a defendant could waive the right to be present at the beginning of trial and thereafter be tried *in absentia. United States v. Crosby*, 917 F.2d 362, 364–66 (8th Cir.1990). The Supreme Court disagreed. The Court reasoned that Rule 43 only supported trial *in absentia* if the defendant voluntarily absented himself after the trial had commenced in his presence. *Crosby*, 506 U.S. at 259–60, 113 S.Ct. at 751–52.

Martinez claims that because he did not appear at the beginning of his trial—or at any point thereafter until sentencing—*Crosby* requires that his conviction be vacated. We must first determine whether the Court's interpretation of Rule 43 was a new rule within the meaning of *Teague* and therefore inapplicable to Martinez's § 2255 motion for collateral relief. We begin by reviewing *Teague*'s nonretroactivity rule and the principles supporting it.

### A.

■ Subject to two narrow exceptions, a habeas petitioner is not entitled to the application of a new rule of criminal procedure in an action collaterally attacking a criminal conviction. *Teague*, 489 U.S. at 310, 109 S.Ct. at 1075. A rule announced in a case decided subsequent to the date on which the habeas petitioner's conviction became final is considered a new rule "if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* at 301, 109 S.Ct. at 1070. The Supreme Court, since *Teague*, has restated the requirements for a new rule in various forms. For example, in *Butler v. McKellar*, 494 U.S. 407, 415, 110 S.Ct. 1212, 1217–18, 108 L.Ed.2d 347 (1990), the Court held that a rule was not considered to be dictated by precedent if it "was susceptible to debate among reasonable minds." And in *Lambrix v. Singletary*, — U.S. —, —, 117 S.Ct. 1517, 1525, 137 L.Ed.2d 771 (1997), the Court determined whether a rule was dictated by precedent by asking whether "the unlawfulness of [petitioner's] conviction was apparent to all reasonable jurists." *See also Sawyer v. Smith*, 497 U.S. 227, 234, 110 S.Ct. 2822, 2827, 111 L.Ed.2d 193 (1990) (describing a new rule as a result "over which reasonable jurists may disagree"). Since *Teague*, the Supreme Court repeatedly has indicated its commitment to the nonretroactivity rule. *See, e.g., O'Dell v. Netherland*, — U.S. —, —, 117 S.Ct. 1969, 1973, 138 L.Ed.2d 351 (1997); *Lambrix*, — U.S. at — –—, 117 S.Ct. at 1524–25; *Gray v. Netherland*, 518 U.S. 152, 166–68, 116 S.Ct. 2074, 2083, 135 L.Ed.2d 457 (1996); *Caspari v. Bohlen*, 510 U.S. 383, 390, 114 S.Ct. 948, 953–54, 127 L.Ed.2d 236 (1994); *Gilmore v. Taylor*, 508 U.S. 333, 339–40, 113 S.Ct. 2112, 2115–17, 124 L.Ed.2d 306 (1993); *Graham v. Collins*, 506 U.S. 461, 466–67, 113 S.Ct. 892, 897–98, 122 L.Ed.2d 260 (1993).

■ The Supreme Court has grounded the nonretroactivity rule both in the purposes of habeas corpus and in the values of federalism and finality. The purpose of the habeas writ is not to provide a substitute for direct review of a petitioner's conviction. *Teague*, 489 U.S. at 306, 109 S.Ct. at 1073. Habeas relief instead serves as an incentive—in addition to direct review—for state and federal courts to faithfully apply federal law. This purpose is served sufficiently by requiring courts to apply federal law as it exists at the time a defendant's conviction becomes final. *Sawyer*, 497 U.S. at 234, 110 S.Ct. at 2827. The purpose of the writ of habeas corpus is fulfilled without requiring courts to divine the future twists and turns

that federal law might take. Thus, "*Teague* asks state court judges to judge reasonably, not presciently." *O'Dell*, —— U.S. at ——, 117 S.Ct. at 1978.

The nonretroactivity rule also derives from a proper respect for federalism and finality. Retroactive application of new rules by federal courts to invalidate state convictions imposes an unnecessary cost on the States by requiring them to continually relitigate convictions, even when those convictions satisfied all constitutional requirements at the time they became final. *Teague* recognized that these federalism costs "generally far outweigh the benefits" of retroactive application of new rules. 489 U.S. at 310, 109 S.Ct. at 1075 (internal quotation marks omitted) (citation omitted). Just as importantly, the application of new rules of criminal procedure in actions for collateral relief threatens the principle of finality: " 'No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation.' " *Id.* at 309, 109 S.Ct. at 1075 (quoting *Mackey v. United States*, 401 U.S. 667, 691, 91 S.Ct. 1171, 1179, 28 L.Ed.2d 388 (1971) (Harlan, J., concurring in judgments in part and dissenting in part)). Thus, in light of the purposes of habeas relief and the significant costs imposed by the retroactive application of new rules, decisions subsequent to the date on which a conviction became final are normally not applied retroactively in suits for collateral relief.

### B.

■ Although *Teague* itself involved a challenge to a state conviction, the decision applies to *federal* prisoners' actions for collateral relief under 28 U.S.C. § 2255 for several reasons. First, *Teague* adopted the approach to retroactivity Justice Harlan had advocated in previous decisions. *See Mackey*, 401 U.S. at 675, 91 S.Ct. at 1171 (Harlan, J., concurring in judgments in part and dissenting in part); *Desist v. United States*, 394 U.S. 244, 256, 89 S.Ct. 1030, 1037–38, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting). Because each of those cases presented the retroactivity issue in the context of convictions under federal criminal law, it can safely be assumed that the Court would apply *Teague*'s nonretroactivity principle to suits under § 2255. Indeed, the purpose of collateral relief under § 2255 is identical to that of the habeas writ generally. *See Davis v. United States*, 417 U.S. 333, 343, 94 S.Ct. 2298, 2304, 41 L.Ed.2d 109 (1974) (" § 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus"). Furthermore, one of the two justifications for the *Teague* decision—and perhaps the central one—was concern for the finality of criminal convictions. *Teague*, 489 U.S. at 306–10, 109 S.Ct. at 1073–75. This motivating factor counsels no less respect for the finality of convictions under federal criminal law than for state convictions. Finally, *Teague* expressed concern that the Court's prior retroactivity framework "led to unfortunate disparity in the treatment of similarly situated defendants on collateral review." *Id.* at 305, 109 S.Ct. at 1072–73. It would be wrong to create an anomaly whereby new rules would apply retroactively to those in federal custody but not to state prisoners. We note that our decision to apply *Teague* in actions brought under § 2255 is in harmony with other courts that have considered the question. *See, e.g., Van Daalwyk v. United States*, 21 F.3d 179, 182–83 (7th Cir.1994); *Gilberti v. United States*, 917 F.2d 92, 94–95 (2d Cir.1990); *United States v. Tayman*, 885 F.Supp. 832, 837–38 (E.D.Va.1995); *cf. United States v. Pavlico*, 961 F.2d 440, 443 (4th Cir.1992) (implying that *Teague* is obstacle faced by § 2255 petitioners).

Martinez contends, however, that *Teague*'s nonretroactivity rule applies only to new interpretations of constitutional precedent and not to new interpretations of rules or statutes. We disagree. Martinez merely points out that the Court has applied *Teague* only in cases concerning new constitutional rules. Martinez fails to supply, and we are unable to identify, any valid reason why *Teague* should be limited to that context.

■ It might be argued that because statutory text can confer only one meaning, a court decision interpreting that text announces what the statute has meant both

prior and subsequent to that court's decision. *See, e.g., United States v. McKie,* 73 F.3d 1149, 1153 (D.C.Cir.1996). When the Supreme Court announces a new constitutional rule, however, it also interprets a text—the Constitution. Therefore, if accepted, this rationale for not applying *Teague* to new interpretations of statutes would undermine *Teague*'s nonretroactivity rule itself. Moreover, the respect for finality that underlies *Teague* is implicated equally by new interpretations of rules or statutes. Perhaps for these reasons, other courts have applied *Teague* to new statutory interpretations. *See, e.g., Gilberti,* 917 F.2d 92 (declining, on *Teague* grounds, to apply new interpretation of Federal Magistrates Act, 28 U.S.C. §§ 631–639, in suit for collateral relief); *see also Tayman,* 885 F.Supp. at 838–39 (holding *Teague* applicable to new statutory rules but declining to apply on other grounds). We hold, therefore, that *Teague*'s nonretroactivity rule is applicable to new interpretations of rules or statutes.*

### C.

■ Martinez argues that even within *Teague*'s framework, the Supreme Court's decision in *Crosby* was dictated by precedent because the clear language of Rule 43 admitted of no other reasonable interpretation. We disagree. Before *Crosby,* no Supreme Court case ever dictated, or even intimated, that Rule 43 precluded trial *in absentia* after a defendant had made a knowing and voluntary waiver of the right to be present at the commencement of trial.

Martinez does not cite, and we do not find, any decision by a federal court of appeals that dictated *Crosby*'s result either. In fact, before Martinez's conviction became final, *seven* circuit courts of appeals (not including the Eighth Circuit's decision in *Crosby* itself) had held that a defendant could waive his

·right to be present at the beginning of trial notwithstanding Rule 43's language. *See United States v. Wright,* 932 F.2d 868, 879 (10th Cir.1991); *United States v. Houtchens,* 926 F.2d 824, 826–27 (9th Cir.1991); *United States v. Mera,* 921 F.2d 18, 20 (2d Cir.1990) (per curiam); *United States v. Crews,* 695 F.2d 519, 520–21 (11th Cir.1983) (per curiam); *United States v. Barton,* 647 F.2d 224, 238 (2d Cir.1981); *United States v. Powell,* 611 F.2d 41, 42–43 (4th Cir.1979); *United States v. Benavides,* 596 F.2d 137, 139 (5th Cir.1979); *United States v. Peterson,* 524 F.2d 167, 183–85 (4th Cir.1975); *Government of V.I. v. Brown,* 507 F.2d 186, 188–90 (3d Cir.1975); *United States v. Tortora,* 464 F.2d 1202, 1208–09 (2d Cir.1972). The fact that seven courts of appeals agreed on this proposition undoubtedly proves that *Crosby*'s outcome was susceptible to debate among reasonable· jurists at the time Martinez's conviction became final. The Supreme Court, in its *Teague* jurisprudence, often has cited the existence of decisions by the federal courts of appeals to confirm that a subsequent Supreme Court decision's contrary result was not dictated by precedent. *See O'Dell,* —— U.S. at —— n. 3, 117 S.Ct. at 1978 n. 3; *Caspari,* 510 U.S. at 393–95, 114 S.Ct. at 955–56; *Butler,* 494 U.S. at 415, 110 S.Ct. at 1217–18; *see also Stringer v. Black,* 503 U.S. 222, 236–37, 112 S.Ct. 1130, 1139–40, 117 L.Ed.2d 367 (1992) (holding that Fifth Circuit precedent, although not dispositive, was relevant to inquiry).

These appellate decisions upholding trial *in absentia* even when a defendant was not present for the beginning of trial were not without reason, as Martinez contends. Those courts acknowledged that Rule 43's language might support a distinction between waiver after and waiver before the commencement of trial. The courts reasoned,

---

* The availability of § 2255 collateral relief is more restrictive when the basis for the claim is statutory rather than constitutional error: "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979) (quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468,

471, 7 L.Ed.2d 417 (1962)). Because we affirm the denial of Martinez's § 2255 motion on *Teague* grounds, we need not decide whether his claim presents such an error of law. We do note, however, that it would be anomalous to apply new rules of statutory interpretation retroactively, but not new constitutional rules, when collateral relief for statutory errors is more circumscribed than for errors of constitutional magnitude.

however, that because Rule 43 was intended to restate existing law, it was necessary to examine Supreme Court precedent in construing the Rule. *See, e.g., Houtchens,* 926 F.2d at 826; *Peterson,* 524 F.2d at 183; *Brown,* 507 F.2d at 189. Thus, the courts of appeals looked to the Supreme Court's decision in *Diaz v. United States,* 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912), in which trial was permitted to proceed when the defendant voluntarily absented himself after the trial's commencement. Accordingly, the courts found that Rule 43 clearly permitted a defendant to waive his right to be present at trial. Then, finding that there were no "talismanic properties which differentiate the commencement of a trial from later stages," *Brown,* 507 F.2d at 189, these courts held that the reasoning of *Diaz* permitted a defendant to waive the right to be present at the beginning of trial. *See, e.g., Houtchens,* 926 F.2d at 826; *Peterson,* 524 F.2d at 183–84. The approach taken by the courts of appeals in construing Rule 43 could hardly be characterized as unreasonable. As a result, *Crosby* simply was not dictated by precedent.

Martinez's argument that Rule 43, at the time his conviction became final, was so clearly worded as to dictate *Crosby*'s result is additionally belied by the fact that Rule 43 was amended in 1995 to clarify its meaning on this precise issue. The 1995 amendments changed Rule 43 to state that the right to be present at trial will be considered waived "whenever a defendant, initially present *at trial, or having pleaded guilty or nolo contendere* ... is voluntarily absent after the trial has commenced...." Fed.R.Crim.P. 43(b)(1) (language added by amendment in italics). These words were added to clarify that, in accordance with *Crosby,* a defendant may be tried *in absentia* only if the defendant was previously present at trial. Fed. R.Crim.P. 43 advisory committee notes. The change thus clarified that a defendant's presence merely at arraignment or some other pretrial proceeding would not permit his trial *in absentia.* If Rule 43 in its previous form were so clear as to compel *Crosby*'s result, presumably a clarifying amendment would not have been necessary.

Finally, Martinez relies on the Supreme Court's statement in *Crosby* that "[t]he lan-

guage, history, and logic of Rule 43 support a straightforward interpretation that prohibits the trial *in absentia* of a defendant who is not present at the beginning of trial." 506 U.S. at 262, 113 S.Ct. at 752–53. Martinez contends that the Court's conclusion is tantamount to holding that *Crosby*'s result was dictated by precedent for purposes of *Teague. See Pelaez v. United States,* 27 F.3d 219, 223 (6th Cir.1994). We do not ascribe the same import to the Court's choice of words. The Court naturally presents its holding in its most persuasive form; indeed, that is the nature of judicial opinions. The perceived strength of the Court's conviction, however, does not signify its judgment that every prior lower court holding to the contrary must have been unreasonable. As the Court itself has acknowledged, "the fact that a court says that its decision is within the 'logical compass' of an earlier decision, or indeed that it is 'controlled' by a prior decision, is not conclusive for purposes of deciding whether the current decision is a 'new rule' under *Teague.*" *Butler,* 494 U.S. at 415, 110 S.Ct. at 1217–18. We already have analyzed the contrary appellate decisions and concluded that the approach followed by those courts was a reasonable one. The fact that the Supreme Court subsequently stated its holding in *Crosby* in a clear, persuasive manner simply does not alter our conclusion that reasonable jurists at the time Martinez's conviction became final could have disagreed over Rule 43's requirements.

### D.

■ Because we find *Crosby*'s interpretation to be a new rule within the meaning of *Teague,* we must now consider whether either of *Teague*'s two narrow exceptions to nonretroactivity apply to Martinez's claim. The first exception applies to "new rules that place 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" *Caspari,* 510 U.S. at 396, 114 S.Ct. at 956 (quoting *Teague,* 489 U.S. at 307, 109 S.Ct. at 1073–74). Martinez wisely chooses not to invoke this exception, as *Crosby* did not decriminalize the acts for which he was convicted. *See Lambrix,* —— U.S. at ——, 117 S.Ct. at 1531.

Martinez does, however, argue that *Crosby*'s new interpretation of Rule 43 falls within *Teague*'s second exception for "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *O'Dell,* —— U.S. at ——, 117 S.Ct. at 1978 (internal quotation marks omitted) (citations omitted). Martinez contends that *Crosby* should be applied retroactively because the right to be present at trial is a fundamental right guaranteed by the Sixth Amendment.

The Court has emphasized a restrictive approach to *Teague*'s second exception, holding that it is "meant to apply only to a small core of rules." *Graham,* 506 U.S. at 478, 113 S.Ct. at 903. The Court's actions confirm its admonition, as it has yet to identify any new rule that satisfies this exception. *See* Richard H. Fallon et al., *Hart and Wechsler's The Federal Courts and the Federal System* 1409 (4th ed.1996). Martinez errs initially by relying on the fundamental right to be present at trial. The right implicated by *Crosby* is much narrower: a nonwaiveable right to be present at the commencement of trial but only a waiveable right thereafter. The Court in *Crosby* conceded that "it may be true that there are no 'talismanic properties which differentiate the commencement of a trial from later stages,'" 506 U.S. at 261, 113 S.Ct. at 752 (quoting *Brown,* 507 F.2d at 189), and described the distinction between the stages of trial as "at least a plausible place at which to draw that line." *Id.* The presence of a plausible line, however, hardly alters "our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." *O'Dell,* —— U.S. at ——, 117 S.Ct. at 1978 (internal quotation marks omitted) (citation omitted). We hold, therefore, that Martinez fails to satisfy *Teague*'s second exception.

### III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED.*